**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. ALLIED MESSENGER SERVICE, Inc., et al.**

District Court, S. D. New York.

Oct. 31, 1942.

Warner W. Gardner, Sol., and Roy C. Frank, Asst. Sol., both of Washington, D. C., and Arthur E. Reyman, Regional Atty., and William E. Sullivan, Associate Atty., both of New York City, United States Department of Labor (Mortimer B. Wolf,

774

Asst. Sol., and Edward Jay Fruchtman, both of Washington, D. C., of counsel), for plaintiff.

Morris B. Matzkin, of New York City, for defendant.

NEVIN, District Judge.

On April 25, 1941, Philip B. Fleming, Administrator, filed a complaint against the defendants, Allied Messenger Service, Inc., Benjamin Kleinman, Anna Kleinman, Sidney Kleinman, and Joseph H. Kleinman, praying for an injunction to restrain violations of sections 15(a) (1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C. A. § 201 et seq. After the resignation of Philip B. Fleming, and of his successor, Thomas Holland, L. Metcalfe Walling became Administrator in regular succession and was substituted as plaintiff herein by order duly entered.

The complaint alleges in substance that the corporate and individual defendants, under the names of Allied Messenger Service, Inc., Interstate Service, and Allied Service System, are engaged in the business of supplying messengers, at a fee, to various "individuals, firms, companies, and corporations," which are engaged in interstate commerce or in the production of goods therefor, or in both; that the defendants have employed and are employing approximately 40 employees who are engaged in interstate commerce and in the production of goods for interstate commerce, and in processes or occupations necessary thereto; that the businesses of certain individuals, firms, companies, and corporations for which defendants' employees perform work, involves trade, commerce, transportation, transmission, and communication among the several States or from the State of New York to places outside thereof, and that such individuals, firms, companies, and corporations produce goods—substantial quantities of which goods "produced in and about their places of business have been and are being produced for interstate commerce and have been and are being sold, shipped, transported and delivered in interstate commerce from their places of business in the State of New York to, into and through states other than the State of New York."

The complaint further alleges that subsequent to October 25, 1939, the defendants failed and refused to pay many of their employees wages at rates not less than 30 cents an hour, in violation of the provisions of sections 6 and 15(a) (2) of the statute; and that the defendants failed and refused to pay employees, for overtime hours worked, wages at not less than one and one-half times their regular hourly rate of pay, in violation of sections 7 and 15(a) (2) of the Act.

It is further alleged that defendants violated section 15(a) (1) of the Act in that they shipped, delivered and transported in interstate commerce from New York, to, into and through States other than the State of New York, goods produced in the aforesaid places of business in the production of which many of their employees were employed in violation of sections 6 and 7 of the Act. It is also charged that after the promulgation of regulations requiring the keeping of certain records, the defendants violated sections 11(c) and 15(a) (5) of the Act in failing and refusing to make, keep and preserve records as required by the regulations.

The answer denies generally the allegations of the complaint and asserts the following defenses: (1) that the Court has no jurisdiction over the subject matter of the action; (2) that the Court has no jurisdiction over the persons of the defendants; (3) that the complaint fails to state a claim against the defendants upon which relief may be granted; and (4) that the defendant, Benjamin H. Kleinman, at all of the times mentioned in the complaint, was doing business under the firm name and style of Interstate Messenger Service, and that as such he duly complied with all of the requirements of the statute.

On March 23, 1942, a stipulation was entered into by counsel for the respective parties. That stipulation is now Exhibit No. 1 herein. It provides as follows: "It Is Hereby Stipulated, by and between the parties hereto, that, for the purposes of the trial herein, all of the employees of defendants, employed as messengers during the period beginning October 25, 1939 and continuously thereafter through April 26, 1941, with the exception of Thomas Cook, were paid less than thirty cents (30¢) an hour; provided that these stipulated facts shall not apply to messengers for the time actually spent by them in performing work for which Benjamin Kleinman, doing business as Interstate Service, tendered bills or made charges for."

It is agreed that the effect of the stipulation is to withdraw from the case defendants' denial of the allegations of the complaint to the effect that during the times mentioned in the complaint defendants paid to many of their employees wages at rates less than thirty cents an hour.

The cause came on for hearing before the court on the pleadings, the stipulation and the evidence on June 29, 1942. After an intervening recess (agreed to by the court and counsel) the trial was resumed on August 11, 1942, and thereafter concluded. It is now finally submitted on the record, the exhibits and the briefs and arguments of counsel.

During the examination of the first witness called by plaintiff, counsel for defendant interposed a general objection, on the grounds of irrelevance and immateriality of any testimony offered on behalf of plaintiff having to do with the business activities of any individual, firm or corporation other than the business activities of the defendants and their employees. At the conclusion of the plaintiff's case, the defendants' counsel renewed his motion to strike all such testimony and moved to dismiss the complaint.

During the trial the court reserved its final ruling on defendants' objections and motions to strike. As to this the following are pertinent portions of the record: "Mr. Matzkin (Counsel for defendants): The only way I can see, and I am not suggesting how your Honor is to rule, I think if your Honor could reserve your decision on my motions and objections as made until the termination of the trial, and if your Honor sees they are material and competent that you will allow them, and—

"The Court: That is exactly what I will do, and intended to suggest, that I will at this time overrule your objections and your motions to strike, so that we can proceed with the testimony. If you want to press those objections after we have finished the hearing, either by way of oral argument or on briefs or on trial, I will hear you, and if I ultimately conclude that all of this evidence is not competent and not material, then I would not consider it in deciding the case. If I conclude that it is, then I will overrule your objections, and I would consider the evidence. * * *

"Mr. Reyman (Of counsel for plaintiff): That is perfectly agreeable.

"The Court: Let these objections, then, and motions, follow through on every question, without having to repeat them."

\* \* \* \* \*

"Mr. Matzkin: I renew my objection to the admission of plaintiff's exhibits in evidence marked 1 up to and including 104-A, B and C, and any subdivisions of the numerals that were stated, on the ground that they are immaterial, incompetent and irrelevant, and on the further ground that they have no bearing on the issues raised by the pleadings.

"The Court: The motions at this time will be overruled, both as to the testimony and as to the exhibits, and counsel for the defendants has his exceptions. * * *

"Mr. Matzkin: I now move to dismiss the plaintiff's complaint, on the ground that the plaintiff has failed to establish a cause of action against the defendants, either as operators of Allied Messenger Service, Inc., or as individuals.

"The Court: I deny that motion at this time also, under the same arrangement."

Upon a further and full consideration of defendants' objections, and motions above referred to, including defendants' motion to dismiss the complaint herein, the court adheres to its rulings during the trial and finds that each and all of the objections and motions referred to are not well taken and that they should each and all be, and hereby they are, here and now finally overruled with exceptions to defendants.

In his brief counsel for defendants states, inter alia that: "The defendant, Allied Messenger Service, Inc., contends that since it does not engage in interstate commerce or in the production of goods for interstate commerce, it does not come within the purview of the said Act (Fair Labor Standards Act of 1938). The defendant, Benjamin Kleinman contends that although he is an officer and stockholder of Allied Messenger Service, Inc., he personally conducts and operates the firm known as Interstate Service, and the latter does comply with the said Act," and further that "the defendants are engaged in a business constituting a service establishment and therefore are not within the Act," and in this connection counsel asserts that "The business conducted by the defendants consists of performing a service for a customer. The messenger furnished by either Allied Messenger Service, Inc., or by Interstate

Service performs no work on the thing delivered, neither does he furnish any materials in connection therewith. The messenger performs a service in that he makes delivery of the thing pursuant to the order of the customer of his employer. In the line of business conducted by the defendants it is known as 'messenger service'. In this case the greater part of the servicing furnished by the defendants as a whole is intrastate."

As to defendants' latter contention, counsel for the Administrator submit that "the contention consists of a broad interpretation of the quoted terms as covering all enterprises providing facilities rather than manufacturing or selling merchandise. The Government's position is that section 13(a) (2) [1] was intended to exempt employees engaged in establishments which cater to the needs of the ultimate consumer, whether such needs be for goods or for services. The legislative history indicates that this was the purpose of section 13(a) (2). * * *"

The court is of opinion that the instant case is ruled by the cases of Kirschbaum v. Walling, Administrator, and Arsenal Building Corporation et al. v. Walling, Administrator, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, decided by the Supreme Court of the United States on June 1, 1942, and that, as claimed by plaintiff, (Br. P. 22) the decision there (both cases decided in one opinion) is "determinative (in favor of plaintiff) in the present situation."

The same view was expressed in Snyder v. Casale, Inc., 1942, 5 Wage Hour Rep. 222, by this court (Hulbert, J.) even before the above referred to decisions by the Supreme Court.

In the Snyder case Judge Hulbert stated (5 Wage Hour Rep. at page 223): "It would seem that if the lessees owned these trucks, leased from the defendant, the employees engaged in repair work in their own shops would come under the provisions of the Act. Compare: Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; N. L. R. B. v. Mackay Radio & Tel. Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

"The reasoning of the Circuit Court of Appeals for this Circuit in Fleming v. Arsenal Building Corp. et al. [125 F.2d 278] (decided Dec. 30, 1941) impels me to conclude that inasmuch as the work of the defendant's employees would be substantially the same as if the lessees employed the said employees directly, defendant's employees must be deemed engaged in production of goods in interstate commerce since the services of these employees are indispensable to the transportation of such goods in such interstate commerce and as such are necessary to their production within the meaning of the Act." The views and conclusions of Judge Hulbert are applicable here. See also Bowie v. Gonzalez, 1 Cir., 117 F.2d 11.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court finds that plaintiff is entitled to the relief prayed for and has arrived at the following:

### Findings of Fact.

1. Allied Messenger Service, Inc., is a corporation organized and existing by virtue of the laws of the State of New York, having its principal place of business at 9 Rockefeller Plaza, Borough of Manhattan, City, County and State of New York. Defendants Benjamin Kleinman, Anna Kleinman, Sidney Kleinman and Joseph H. Kleinman are the President, Secretary-Treasurer, and Vice-Presidents, respectively, and are also the sole stockholders of Allied Messenger Service, Inc.

2. Defendant Allied Messenger Service, Inc., succeeded to the business of Allied Intrastate Messenger Service, Inc., on or about October 25, 1939, solely by change of name as evidenced by a certificate of change of name filed on that date and a certificate of incorporation filed with the Secretary of State on or about November 16, 1939. The individual defendants herein were officers of the predecessor corporation Allied Intrastate Messenger Service, Inc.

3. Defendant Allied Messenger Service, Inc., is wholly owned by the individual defendants, Benjamin Kleinman, Anna Kleinman, Sidney Kleinman and Joseph H. Kleinman, all of whom are brothers and sister.

---

[1] Section 13(a) (2) of the Act reads as follows: "The provisions of sections 6 and 7 [206 and 207 of this title] shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

4. By a certificate filed in the County Clerk's office, County and State of New York, on October 28, 1939, defendant Benjamin Kleinman was duly authorized to do business under the name and style of Interstate Service.

5. Benjamin Kleinman, doing business as Interstate Service, uses the same offices, telephone facilities and telephone number, as does Allied Messenger Service, Inc., and also the same messengers as are employed by Allied Messenger Service, Inc.

6. Messengers employed by Allied Messenger Service, Inc., are used indiscriminately by Interstate Service to handle calls from customers which at times involve a trip by a messenger employed by Allied Messenger Service, Inc., across State lines.

7. All messengers used by Allied Messenger Service, Inc., and Benjamin Kleinman as Interstate Service, are employed regularly by Allied Messenger Service, Inc., and purportedly are employed by Benjamin Kleinman for each errand they may run for him as Interstate Service.

8. Interstate Service was organized by the defendants and each of them in an attempt to segregate the errands run by messengers involving travel between States from errands completed wholly within the State of New York by the same messengers.

9. According to the testimony of defendant Benjamin Kleinman, the books kept by the defendants show a segregation of gross income as between Allied Messenger Service, Inc., and the business done by Benjamin Kleinman as Interstate Service. The segregation reveals approximately $2,000 a year income received for messengers transported across State lines as compared with $23,000 income received from all other sources.

10. During the same week and often during the same day, messengers employed by Allied Messenger Service, Inc., are engaged both in running errands necessitating trips across State lines and in making trips which do not involve the crossing of State lines.

11. Generally speaking the messengers are not aware of the final destination of a call until their arrival at the premises of the particular customer of Allied Messenger Service, Inc., who requests the services of a messenger.

12. Allied Messenger Service, Inc., employs a varying number of messengers, depending upon the season of the year; 35 were employed at the time of filing of the complaint herein (April 26, 1941) and 16 at the time of trial (August 11, 1942).

13. For the period beginning approximately September, 1940, to the date of the filing of the complaint herein on April 26, 1941, Allied Messenger Service, Inc., employed messengers who did work for approximately 200 customers of Allied Messenger Service, Inc. Allied Messenger Service, Inc., retained the same approximate number of customers subsequent to the filing of the complaint to the time of trial. For the six month period preceding the filing of the complaint herein, at least thirty-three (33%) percent and probably a great deal more of the income derived by Allied Messenger Service, Inc., came from firms engaged in interstate commerce or in the production of goods for interstate commerce, exclusive of charges rendered for services by Benjamin Kleinman as Interstate Service. Among the customers of Allied Messenger Service, Inc., for whom messengers employed by the latter did work were several of the largest advertising agencies and publishers in the nation, engaged in interstate commerce or in the production of goods for interstate commerce, or both. Defendants still retain many of those agencies and publishers as customers.

14. Advertising agencies engaged in interstate commerce and in the production of goods for interstate commerce using the messengers provided by the defendants are engaged in the preparation of advertising matter from the creation of an advertising theme to the final insertion and publication of the completed advertisement in the chosen medium. Advertising material prepared by customers of the defendants appear in various media, including magazines enjoying national and international circulation, trade journals, which are distributed throughout the country, and newspapers from coast to coast.

15. Some of the advertising agencies using the messengers provided by the defendants, in addition to the preparation of advertising matter for insertion in printed media also prepare advertisements known in the industry as "commercials" which are broadcast on the radio over national hookups.

16. Messengers employed by Allied Messenger Service, Inc., are used by these advertising agencies regularly and recurrently

in the usual course of their several businesses and the services of the messengers are necessary to the carrying on of the activities of these businesses.

17. During the preparation period of an advertisement, messengers employed by the defendants are used by defendants' customers to run errands between the advertising agency, the advertiser, the engraver, and sometimes the printer, delivering layouts, cuts, and similar materials. They also carry "props", to be used in an advertisement, back and forth from the supplier of the "props" to the advertising agency or photographer. The messengers also call for and deliver proofs of the completed advertisement which have to receive final approval from the agency and often from the advertiser. Some of the advertising agencies which are customers of Allied Messenger Service, Inc., employ messengers of their own in addition using messengers employed by Allied Messenger Service, Inc. Messengers furnished to these advertising agencies by the defendants perform duties identical to the duties performed by the advertising agencies' own messengers.

18. Advertisements prepared by advertising agencies on which messengers employed by Allied Messenger Service, Inc., have done work, and which advertised the products of many manufacturers and producers, a few of which are the Ford Motor Company, National Biscuit Company, Prudential Insurance Company of New Jersey, International Business Machines Corp., Congoleum-Nairn Inc., Lamont Corliss & Co., Enka American Corp. and Koh-I-Noor Inc., have appeared in magazines of national circulation, such as Collier's Weekly, Life, Time, The Saturday Evening Post, The New Yorker, Mademoiselle, Vogue and many others, as well as in newspapers, trade journals, technical journals and other publications of national circulation.

19. Publishers of books and magazines which are distributed nationally utilize messengers employed by Allied Messenger Service, Inc., in various ways, including the pickup and delivery of finally approved manuscripts from the publisher to the printer, and the carrying of plates and proofs between the printer and the publisher. Magazine publishers utilize messengers employed by the defendants to carry proposed advertising and editorial material between the editorial office of the magazine and the owner or the printers of the magazine, and to pick up and deliver cuts, proofs, layouts, plates, and all of the kinds of goods which go to make up a completed editorial and advertisement, and also to pick up and deliver dresses, shoes, handbags, and other articles of apparel from fashion shops to artists, photographers, and others, for display in the finished advertisement.

20. Among the publishers of books who make use of the messengers employed by Allied Messenger Service, Inc., is Farrar & Rinehart, which during the times it has dealt with Allied Messenger Service, Inc., published books and distributed them widely in interstate commerce. Books printed for Farrar & Rinehart are printed by Little-Ives, New York City; others are printed by Wolf in New Jersey and are bound in New York; others are printed and bound at Quinn & Bowdin, Rahway, New Jersey; and other books are printed and bound by the Kingsport Press, Tennessee. Farrar & Rinehart for the period September, 1940, through April, 1941, published some 90 titles, including a number of so-called best sellers, which were distributed to jobbers, rental chains, library suppliers, retailers and the Book of the Month Club. Also this publisher printed and distributed college and school text books throughout all the States of the United States.

21. The sales office of one of the largest paper mills in the United States utilizes the services of messengers employed by the defendants to carry orders and samples of paper as an aid to the facilitation of the movement of goods in interstate commerce and sales thereof in interstate commerce.

22. Defendants' messengers are used by an active printing broker for running errands whenever the broker finds this mode of communication necessary to the highly specialized requirements of bringing author and publisher together in the production, printing and distributing of thousands of volumes of books in interstate commerce.

23. The activities engaged in by messengers employed by defendants are necessary to the efficient conduct and economical operation of the businesses of the many customers of Allied Messenger Service, Inc.

24. Messengers employed by the defendants are required by the defendants to spend a considerable amount of time each day waiting at defendants' place of business for calls. The messengers are not compensated for this waiting time.

25. All of the employees of defendants employed as messengers during the period beginning October 25, 1939, and continuously thereafter to the date of the filing of the complaint herein, with the exception of one, were paid less than thirty (30) cents per hour.

26. During the period beginning October 25, 1939, and continuously thereafter through April 26, 1941, defendants failed and refused to pay overtime compensation to their aforesaid employees at the rates provided for by Section 7 of the Fair Labor Standards Act.

27. Subsequent to October 24, 1938, and continuously thereafter, Allied Messenger Service, Inc., did not record the hours worked and wages paid to its employees as required by the Regulations and amendments thereto which were published in the Federal Register and are known as Title 29, Chapter V, Code of Federal Regulations, Part 516.

28. Defendants have not at any time maintained records which would show the hours worked by and the wages paid to their messenger employees.

29. Defendants' business has none of the usual attributes of a service establishment. Defendants' facilities are not supplied to the general consuming public nor are they utilized by private individuals for personal or family use. Defendants' business consists exclusively of the supplying of messenger facilities to industrial and commercial enterprises.

30. Unless enjoined as prayed for in the complaint, defendants threaten and intend to continue to violate Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act.

### Conclusions of Law.

1. This court has jurisdiction to hear and determine the issues in this cause and to grant the relief prayed for in the complaint herein.

2. Defendants' messenger employees are engaged in interstate commerce or in the production of goods for interstate commerce, within the meaning of the Fair Labor Standards Act.

3. Time spent by defendants' messenger employees in waiting for calls is time worked and must be compensated for according to the provisions of the Act.

4. Defendants' messenger employees are not engaged in a service establishment, within the meaning of Section 13(a) (2) of the Act.

5. The attempt of the defendants to segregate work done by messengers involving the crossing of State lines is not in itself sufficient to excuse their failure to pay minimum wages required by Section 6 or overtime rates required by Section 7 to any messenger employed by them, since all such messengers were employed in commerce or in the production of goods for commerce during each workweek since October 25, 1939.

6. During the period from October 24, 1938, to date, defendants have repeatedly violated the provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Act.

7. Plaintiff is entitled to an injunction restraining defendants and each of them from further violating the provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Act.

Judgment accordingly. Settle judgment before the Clerk on usual notice.