**WALLING v. TWYEFFORT, Inc.**
No. 127, Docket No. 20415.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1947.

This is an appeal from a judgment enjoining defendant from violating § 15(a) (1), (a) (2) and (a) (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The pertinent portions of the statute are set out in the footnote.[1] The facts, not seriously disputed at the trial, were found by the court below as follows:

"The defendant, a Delaware corporation, has its principal place of business in New York City. It is engaged in the business of custom tailoring, making men's and women's clothes to individual order. Approximately sixty-five to seventy-five per cent of its output is shipped to points outside the State of New York. Its premises in New York City comprise a showroom and a bushel or alteration room containing sewing and pressing equipment. Of the eight employees at present working on the premises, all do clerical work, except a designer, a cutter and three bushelmen or men who make alterations. The premises cannot accommodate more than an additional tailor and shipping-clerk. After the employees on the premises cut material in accordance with patterns made there for each customer, the material, together with linings, thread, buttons and other trimmings, is sent to tailors working off the premises, to be sewed according to specific instructions contained on an accompanying tag, these being sufficiently detailed to direct the tailors exactly how to sew and complete the garments and obviating any need of further control, supervision or instructions or the exercise of judgment on their part. One licensed homeworker and approximately sixteen other outside tailors working on premises rented or built by them do the sewing. Another licensed homeworker does some of the repair and alteration work for the defendant. Most of the outside tailors who sewed for defendant's predecessor [before defendant corporation's reorganization] worked in their homes until 1936 when industrial homework in the trade was prohibited [except for certain specially licensed persons]. Thereupon defendant's predecessor ordered its outside tailors to obtain work places apart from their homes. Two of these tailors, who still sew for the defendant, complied by building shops in the yards of their homes. Once a month, defendant, in accordance with its promise to do so, pays the outside tailors a stipulated sum to cover rent and possibly other expenses incurred in the maintenance of their outside

---

[1] Title 29, § 215. "(a) After the expiration of one hundred and twenty days from the date of enactment of sections 201—219 of this title, it shall be unlawful for any person—

"(1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of section 206, or section 207 of this title, or in violation of any regulation or order of the Administrator issued under section 214 of this title * * *

"(2) to violate any of the provisions of section 206 or section 207 of this ti-

tle, or any of the provisions of any regulation or order of the Administrator issued under section 214 of this title;
* * *

"(5) to violate any of the provisions of section 211(c) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect."

Note: § 206 prescribes minimum wages and provides for overtime pay; § 207 prescribes maximum hours, and § 211(c) provides for the keeping of proper records.

shops." Some of the tailors employ errand boys, sweepers and pressers. Their wages are paid by the tailors without reimbursement by defendant. "Several of the outside tailors at times make alterations on garments for defendant, of exactly the same kind as are made by the inside bushelmen, and are compensated therefor at a fixed hourly rate. Sometimes the tailors come for work and at other times defendant sends it to them. There is not any express contract between the tailors and defendant. The defendant is not required to give work to the tailors, nor the tailors required to work for the defendant."

"The outside tailors use, maintain and replace their own sewing machines, needles, irons and other similar equipment, just as was formerly done by such of them as did homework. Generally, the outside tailors work for defendant exclusively, but in the past a few also worked for others. It is stated that one tailor [Goldberg] at present also works for at least four others and employs about fourteen people in his shop. This appears to be an exceptional case." Another, Stigliani, employs a single helper or apprentice. Others who have done so in the past, testified that they no longer employ any such helpers. Some of the outside tailors share their shops with partners or business associates who bear a portion of the expense of maintaining the shop.

"Upon completion and return of each part of a garment sewed by him, the outside tailor is paid at piece rates which have been established by defendant. The payrolls of the outside as well as the inside tailors and other employees are made up every Monday.

"The outside tailors are at liberty to work when it pleases them. They take vacations, but generally at a time when business is slack and at the convenience of the defendant. Several of the outside tailors testified that they worked sixty-five and more usually seventy-five hours a week without receiving any overtime compensation and that they earned at times not more than $800, $1200 and $2500 a year."

Defendant also employs two licensed homeworkers who do exactly the same kind of work as the tailors who work in outside shops. They maintain their own equipment, and are compensated at piece rates in the same way as the outside tailors.

On October 21, 1938, the Administrator of the Wage and Hour Division of the Department of Labor, pursuant to his authority under § 11 (c) of the Act, 29 U.S. C.A. § 211 (c), issued regulations requiring employers subject to the Act to keep records of persons employed by them, and of the wages, hours and other conditions of work of those employees. The trial court concluded that the outside tailors were employees of defendant within the meaning of the Fair Labor Standards Act, and that the defendant had violated the provisions of the Act by failing to keep records as prescribed by the regulations, by failing to pay overtime wages for hours worked in excess of 40 hours a week, and by shipping in interstate commerce the products made by these employees.

On the basis of these conclusions, the court issued an injunction which permanently enjoined the defendant from violating the provisions of the Act in the above-named respects. Defendant appeals, alleging error in the decision that the outside tailors are employees, and in the issuance of the injunction pursuant thereto.

During the course of the trial, Margolin, an outside tailor and the plaintiff's principal witness, testified that he had given to a representative of the plaintiff, a signed statement relating to the instant case. Defendant's counsel asked that the statement be produced for his inspection. On objection by plaintiff to its production on the grounds that the statement was confidential, the trial court, without examining the statement, ruled that it need not be produced. The court also sustained the plaintiff's objection to the defendant's examination at the trial of a statement taken from the files of the Wages and Hours Division of the Department of Labor. This statement related to the Twyeffort Corporation's past efforts to comply with the Act in connection with its inside employees.

William S. Tyson and Morton Liftin, both of Washington, D. C., Irving Rozen, of New York City, George M. Szabad and

Helen Grundstein, both of Washington, D. C., for plaintiff-appellee.

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City (William H. Timbers, Rufus D. McDonald, and Cleveland C. Cory, all of New York City, of counsel), for defendant-appellant.

Before L. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

██ The principal issue in this appeal is whether the trial court correctly classified the outside tailors as defendant's employees within the meaning of the Act which contains the following definitions:

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee * * *

"(e) 'Employee' includes any individual employed by an employer * * *

"(g) 'Employ' includes to suffer or permit to work."

Homeworkers have been held to be employees within these definitions. Guiseppi v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921; Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60; indeed defendant admits that the homeworkers it employs come within the protection of the Act. We see no valid distinction between homeworkers and outside tailors; their work and their conditions of employment (except as to location) are identical. Defendant argues that the outside tailors must be excluded because they are free from supervision, are at liberty to work or not as they choose, and may work for other employers if they wish. But all these arguments, applicable equally to homeworkers, have already been considered and rejected. The fact that the outside tailors may, and sometimes do, work for more than one employer creates no problem except as it affects the payment of overtime wages. Only if an employee works more than 40 hours a week for a particular employer is the latter required to pay overtime. Absent collusion between employers, a tailor could conceivably work 80 hours a week without being entitled to overtime pay, if he divided his time equally between two employers. That the outside tailors receive a regular stipend to cover the expense of maintaining a shop, so that the defendant thus, in effect, pays the rent for the premises on which the work is done, does not indicate that the outside tailors are not his employees, but rather that they are.[2]

We find no difficulty in classifying as employees those of the outside tailors who employ others to do various incidental jobs, such as sweeping and pressing. As the tailors themselves perform the task for which they are paid, it cannot reasonably be argued that, because they delegate some of the minor chores, they are transformed into independent contractors. Nor do we find any merit in defendant's contention that we must exclude from the classification of "employee" those tailors who share their shops with other tailors—partners or business associates, as they have been variously called. As New York State law[3] prohibits homework in the clothing industry, these tailors must maintain shops outside their homes. Their status as employees is not altered merely because they find it more desirable or convenient to share the use of a shop and the cost of its maintenance with another tailor similarly situated.

With respect to the tailor, Stigliani, who employs an apprentice to help him with the actual tailoring, defendant poses a problem which may be stated thus: Does a tailor, who would otherwise clearly be classified as an employee, lose his employee status because he himself employs a single helper? To state the problem is, in effect, to dispose of it. We are here dealing with a remedial statute whose declared purpose is to eradicate the evils attendant upon low wages, long hours, and sub-standard labor conditions. United States v. Darby, 312 U. S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A. L.R. 1430; Missel v. Overnight Motor Transportation Co., 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. Drawing the line between employees and independent contrac-

---

[2] See Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60, 64.

[3] By order of the Industrial Commissioner, pursuant to New York Labor Law, Consol.Laws, c. 31, Art. 13, §§ 350, 351.

tors cannot be done mechanically; it calls for rational judgment as the facts vary, but that need not terrify us. (Chitty, J., said that "courts of justice ought not to be puzzled by such old scholastic questions as to where a horse's tail begins and where it ceases. You are obliged to say, 'This is a horse's tail' at some time.") [4] We think that the mere fact of hiring a single helper clearly does not suffice to put a tailor on the independent-contractor side of the line. For that fact does not relieve that tailor from exposure "to the evils the statute was designed to eradicate" [4a] nor make less appropriate the remedies the statute affords.

 We do not think that Goldberg, who employs some 14 other tailors in his shop, does come within the scope of the injunction, which relates only to "employees." Whether or not he personally performs any of the actual tailoring work is not decisive, for it seems to us that a man who employs 14 men to do the work that he has contracted to do cannot reasonably be classified as anything but an independent contractor. Appellant claims that there are others in the same position as Goldberg. However, there is no finding to that effect, and the record is extremely fragmentary on this point. If there actually are others, then they too are independent contractors, and of course the injunction does not apply to them.

Defendant contends that the injunction order errs because it includes within its scope the defendant's obligations to the employees of those tailors who themselves come within it. But that issue is not before us, since the order does not mention those sub-employees, and since plaintiff advises us that he has no intention of ever asserting that it relates to them.

 Defendant, relying on United States v. Andolschek, 2 Cir., 142 F.2d 503, and United States v. Beekman, 2 Cir., 155 F.2d 580, 584, alleges error in the exclusion of the Margolin statement. We agree that the doctrine of those cases applies in civil as well as in criminal cases. And, no doubt, the statement might have been relevant,

with respect to Margolin's credibility. But the error was harmless, since the facts to which he testified, so far as relevant, were not in dispute. The experienced trial judge unquestionably ignored Margolin's testimony that he considered himself an employee; for, as his status constituted an issue for the judge's decision, Margolin's opinion was of no moment.

The exclusion of the statement concerning Twyeffort's previous record was not error. While the question of general good faith in compliance with the Act is relevant where the violations have ceased before the Administrator begins an action, it has no bearing on the issuance of an injunction where the violations have continued up to the commencement of the suit, and where the employer still asserts that the Act does not apply. See Walling v. Youngerman-Reynolds Hardwood Co., Inc., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; cf. Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29.

Affirmed.

---

* [4] Lavery v. Pursell, 1888, 39 Ch.D. 508, 514.

[4a] N. L. R. B. v. Hearst Publications, 322 U.S. 111, 127, 64 S.Ct. 851, 88 L.Ed. 1170.