**DURKIN, Secretary of Labor, v. SHONE et al.**

**No. 2003.**

United States District Court
E. D. Tennessee, N. D.

May 27, 1953.

David V. Manker, U. S. Department of Labor, Nashville, Tenn., for plaintiff.

Myron Ely, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is a suit for injunction restraining defendant permanently from violating the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., specifically subsections 215(a) (1), 215(a) (2), and 215, (a) (5).

The complaint alleges that defendant, operating under the business name of Allied Agencies, located at 1202 Bernard Street, Knoxville, Tennessee, and having about 40 employees, is engaged in procuring and selling names used in direct mail advertising and in handling for advertisers direct mail advertising material.

It is further alleged that defendant has, since August 5, 1950, violated sections 206 and 207 of the Fair Labor Standards Act, hereinafter referred to as the Act, by paying many of these employees less than 75 cents an hour and by working them over 40 hours per week without paying one and one-half times their regular rate for overtime; that defendant has violated section 211(c) of the Act by failing to keep and preserve records of the wages and hours of his employees as required by regulations issued by the Administrator; that defendant has failed to obtain, maintain, keep and preserve handbooks for his employees, employed as industrial homeworkers; that defendant has since August 5, 1950, violated section 215(a) (1) of the Act in that he has placed in interstate commerce goods produced by many of his employees in violation of sections 206 and 207.

Defendant denies that he has violated the Act and denies that plaintiff is entitled to an injunction.

Defendant says that for more than a year preceding the filing of the complaint he was not engaged in buying, preparing and selling lists of names as alleged; that he has been engaged in preparation, handling and sorting of advertising material for direct mail advertisers. He denies that he has been employing about 40 employees, but says that he has employed about 20, though not all at one time. Defendant says that the employees have been preparing advertising material for mail, though not at his place of business. He says most of these persons were not strictly employees, but were independent contractors who were paid on a "piece" basis and were not engaged in preparing materials for interstate commerce. He denies that within a year preceding filing of the complaint he delivered mailing lists in interstate commerce, or that he or his employees were engaged in interstate commerce, or in the production of goods for interstate commerce. He denies specifically the violation of any of the sections of the Act charged in the complaint. He denies that he is subject to the provisions of the Act. He accordingly denies that plaintiff is entitled to any relief against him.

A pre-trial deposition of defendant was taken consisting of some 343 pages. The case was tried, however, on stipulations of fact presumably based for the most part on information disclosed in the deposition. It was agreed by counsel that the Court would make its conclusions of law solely from the complaint and answer and the three separate stipulations of fact which were made during the trial.

The attorneys for the parties agreed in the pre-trial conference and in the trial on the merits that there are three issues for determination which are as follows:

1. Whether persons referred to in the pleadings and stipulations as homeworkers are employees of the defendant within the meaning of the Fair Labor Standards Act, or independent contractors?

2. Whether those persons, if defendant's employees, are covered by the provisions of the Act?

3. Whether, if covered, defendant's employees are exempt from the provisions of sections 206 and 207 of the Act by reason of section 213(a) (2) thereof on the ground that they are employed by a retail or service establishment within the meaning of said section 213(a) (2)?

During the argument counsel for the defendant virtually conceded that the homeworkers were employees of the defendant within the meaning of the Act. He stated in substance that, although he did not agree with the holdings of the various courts who have dealt with the question, he was forced to concede that such holdings were to the effect that homeworkers who worked in situations such as shown in this record were not independent contractors but were employees of those concerns for whom they worked.

It is stipulated that throughout the period involved in this litigation a portion of defendant's business has included the services of individuals referred to as "home workers" in typing of labels, addressing of envelopes and the preparation of Master Ditto Sheets, such work as a general rule being performed by those individuals in their respective homes. The principal business of the defendant is the processing and getting out of mail material. As a part of this work the homeworker typed labels and addressed envelopes. This is a service required by certain of the concerns who are customers of the defendant. If such work was not performed, the defendant would likely lose this business. The names and addresses used by the homeworker in the typing of labels, addressing of envelopes and preparing of Master Ditto Sheets are supplied by defendant's customers and may consist of letters, envelopes, or lists of names and addresses, and such names and addresses are received by defendant from out of the state. After such names and addresses are received by defendant and after being copied by the homeworkers, the names and addresses furnished by defendant's customers or list-brokers are returned, as a

rule, to the respective out-of-state suppliers. For such typing activities defendant pays homeworkers $3.00, $3.25, $3.50 and $3.65 per thousand. Defendant turns over to the homeworker the names and addresses the homeworker types on these labels. Defendant also furnishes the labels, in sheets, usually 33 labels to a sheet. The homeworker furnishes the typewriter and carbon paper used in the typing of such labels.

Where the homeworker's activity involves the addressing of envelopes, the defendant furnishes the names and addresses which the homeworker uses in addressing the envelopes. The envelopes are supplied by defendant's customer and are received from the customer located outside of the State of Tennessee. In the addressing of the envelopes the homeworker furnishes only the typewriter.

Where the homeworker's activity involves the preparation of Master Ditto Sheets, for which he or she is paid $3.10 per thousand names and addresses typed, the defendant turns over to the homeworker the names and addresses to be used. The homeworker furnishes only the typewriter.

In every instance the homeworker comes to defendant's establishment to receive whatever work comes to the homeworker and at the completion of the assignment returns the finished work to defendant's establishment. In the completion of the particular assignment in the home, the homeworker is not under direct supervision of defendant or defendant's supervisors.

Upon the return of the completed Master Ditto Sheets to defendant's establishment by the homeworker the preparation of the labels from such Master Ditto Sheets is carried on in defendant's establishment and as many as 30 copies may be made from a single Master Ditto Sheet.

Defendant has not kept, and is not at this time keeping, all records required by Regulation, Part 516, of the Administrator of the Wage and Hour Division.

The conclusion is inescapable from the foregoing facts that the homeworkers are doing work for the defendant which includes them in the statutory definition of employees under the Fair Labor Standards Act. See, Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60; Walling v. Twyeffort, Inc., 2 Cir., 158 F.2d 944; Fleming v. Palmer, 1 Cir., 123 F.2d 749, certiorari denied 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739.

Defendant's contention that he is not and these employees are not engaged in interstate commerce or production of goods for interstate commerce, makes the second issue. In oral argument counsel for defendant stated in substance that defendant's employees produced labels which were shipped in interstate commerce and that in reality this brought them within the coverage of the Act. He contended, however, that inasmuch as the production of the labels constituted only 10 per cent of defendant's work defendant came under the retail establishment exemption provision of section 213(a) (2) of the Act.

Sections 206(a) and 207(a) of the Act require the employer to pay minimum rates and overtime compensation for hours in excess of 40 hours per week to any employee "who is engaged in commerce or in the production of goods for commerce." The defendant, as Allied Agencies, was engaged during a period of several years prior to October, 1951, in a mail order business, which included "copying, reproducing, typing, buying, renting and selling mailing lists as a list broker and the collating and processing of advertising material for his customers." This business was sold by defendant in 1951. The mail and advertising material were forwarded through the United States mails to various states. During the period since August 5, 1950, defendant has been engaged in the preparation and mailing of circular advertising matter for national publications, mail order houses and similar concerns. Soon after representatives of the Department of Labor began an investigation of defendant's activities, he ceased activity for a number of months but thereafter resumed business on a smaller scale. For a brief time during this period defendant operated three shifts, employing from 20 to 30 employees on each shift, each shift having a supervisor. More recently he has employed as many as 25

employees in the establishment in addition to the various homeworkers.

The defendant employed employees in his establishment for the purpose of processing mail, and certain of these employees were employed as supervisors, having the authority to hire and fire, as well as to oversee the work done by the various employees and to issue material to and receive materials from and pay homeworkers upon completion and return of the work. On April 30, 1953, he had 12 employees on his establishment payroll, including two supervisors and a janitor.

Since October, 1951, and up to April 30, 1953, defendant's principal business was the processing and getting out of direct mail material.

Processing, as defined by the defendant, involves all operations up to and including delivery at the Post Office of the mail advertising material. This processing includes the collating of various pieces of advertising material intended for mailing, inserting such material in envelopes, sealing the envelopes, separating and sorting such mail matter according to states and cities within the various states. The final process is the tying of the mail into separate bundles according to the cities and states.

As previously shown, in the processing of the advertising materials furnished him by his customers, the only materials furnished by defendant were labels and the Master Ditto Sheets, including the labels reproduced therefrom.

Between August 5, 1950, and May 1, 1953, the defendant employed many persons in his establishment in Knoxville, Tennessee, said employees having been engaged in carrying on the various operations involved in defendant's direct mail advertising business. The principal customers of the defendant were non-residents of the State of Tennessee, during the period under consideration,

The advertising material is received at defendant's business in Knoxville and when so received, is stored in defendant's establishment until such time as it is processed and worked on by his employees, following which it is mailed to addresses throughout the United States, or is returned in bulk to the out-of-state customers.

Thus, it is shown from the foregoing narration of facts as gathered from the stipulations that all of the advertising material that is received by the defendant from his customers, most of whom ship from other states into the State of Tennessee, is stored at his establishment in Knoxville, Tennessee, where it is worked on by his employees and after the work is completed is either returned in bulk to his customers, in most instances outside of Tennessee, or shipped to various individuals outside of the State.

Under the view that the Court takes of the case it is not necessary to specifically determine whether the activities of defendant's employees constitute actual engagement in interstate commerce. The Court is cited to a number of cases which held that such activities do constitute interstate commerce. See, Tobin v. Lambert, d/b/a Modern Telephone Business Service, D.C. Utah, 22 Lab. Cases 6.7, 129; Bloemer v. Ezell, D.C.Ky., 112 F.Supp. 814.

■ As the Court views the situation, the foregoing activities do show that defendant's employees are engaged in the production of goods for interstate commerce within the meaning of the Act. The definition of the word "produce" that is contained in section 203(j) of the Act includes "handling, transporting, or in any * * * manner working on such goods," and goods is defined in section 203(i) to include the "articles or subjects of commerce of any character".

The Administrator of the Wage and Hour Division, interpretative bulletin, part 776, subpart "A"—General, May 1950, page 21, under Section 776.20—Goods, states in part as follows:

"(b) 'Articles or subjects of commerce of any character.'

"It will be observed that 'goods' as defined in the Act are not limited to commercial goods or articles of trade, or, indeed, to tangible property, but in-

clude 'articles or subjects of commerce *of any character*' (emphasis supplied). It is well settled that things such as 'ideas, * * * orders, and intelligence' are 'subjects of commerce.' Telegraphic messages have, accordingly, been held to be 'goods' within the meaning of the Act. Other articles or subjects of commerce which fall within the definition of 'goods' include written materials such as newspapers, magazines, brochures, pamphlets, bulletins, and announcements; written reports, fiscal and other statements and accounts, correspondence, lawyers' briefs and other documents; advertising, motion pictures, newspaper and radio copy, artwork, and manuscripts for publication; sample books; letterheads, envelopes, shipping tags, labels, check books, blank books, book covers, advertising circulars and candy wrappers."

■ Although the Administrator's interpretation of the Act is not controlling upon the Court, it represents experience and informed judgment to which courts may properly resort for guidance. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124.

The defendant's employees produced the labels. The production of labels constituted 10% of defendant's work. The labels added to the advertisement of materials received by the defendant so that when they were shipped from the defendant's establishment in Knoxville to points out of the state, they were not in the same condition as they were when received. This alone should be sufficient to show that defendant's employees are engaged in the production of goods for interstate commerce within the meaning of the Act. Baldwin v. Emigrant Industrial Savings Bank, 2 Cir., 150 F.2d 524; Ullo v. Smith, D.C.N.Y., 62 F. Supp. 757; Tobin v. Household Finance Corp., D.C.Pa., 106 F.Supp. 541; Hogue v. National Automotive Parts Ass'n, D.C. Mich., 87 F.Supp. 816; Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565.

Employees whose work bears such a close relationship and direct essentiality to pro-duction of goods for commerce are covered by the Act. Walling v. Allied Messenger Service, Inc., D.C.N.Y., 47 F.Supp. 773; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L. Ed. 1865.

We come now to the contention of the defendant that his business is that of a retail establishment within the meaning of section 213(a) of the Act as amended on October 26, 1949, and that his employees are exempted from the provisions of the Act. Section 213(a) (2) of the Act provides in part as follows:

"The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry".

■ The burden of proof is upon the defendant to show that he comes within the foregoing exemption provisions of the Act. Walling v. General Industries Co., 6 Cir., 155 F.2d 711. Provision of the Act granting exemptions from its operation are to be narrowly construed. Phillips Co. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L. Ed. 1095.

The managers on the part of the House at the Conference on the disagreeing votes of the two Houses on the amendment of the Senate Bill (H.R. 5856) to provide that the amendment to the Fair Labor Standards Act of 1938, submitted a statement in explanation of the effect of the action agreed upon by the conferees. A portion of this report is as follows:

"Under paragraph (2) of section 13 (a) as agreed to in conference an establishment is an exempt retail or service establishment if it meets three tests:

"First, over 50 percent of the establishment's sales by annual dollar volume of goods or services must be made within the State in which the establishment is located. The requirement that the greater part of the selling or servicing be in intrastate commerce found in the present law is eliminated because of the tendency of the courts to hold that many sales or services made or performed within a State are not intrastate sales or services. See Kirschbaum v. Walling, 316 U.S. 517, 526, 62 S.Ct. 1116, 86 L.Ed. 1638; Boutell v. Walling, 327 U.S. 463, 467, 66 S. Ct. 631, 90 L.Ed. 786. Under the new test, if the sales are made within the State in which the establishment is located, it is immaterial that the sales (a) are made pursuant to prior orders from customers, (b) contemplate the purchase of goods by the establishment from outside the State to fill customers' orders, or (c) are made to customers who are engaged in interstate commerce or in the production of goods for interstate commerce. In this connection, see Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

"The second test provides that in order for an establishment to be exempt not less than 75 percent of its annual dollar volume of sales of goods or services (or of both) must not be for resale. In other words, at least three-fourths of the goods or services (or both) sold must be to purchasers who do not buy for the purpose of reselling. Normally, goods are to be considered as sold for resale even though the purchaser sells them in an altered form. In section 3(n) there is a special definition of the word 'resale' which is applicable in the case of building materials. This has been discussed above.

"The third test provides that 75 percent of the establishment's annual dollar volume of sales of goods or services (or both) must be recognized in the particular industry as retail sales or services. Under this test any sale or service, regardless of the type of customer, will have to be treated by the Administrator and courts as a retail sale or service, so long as such sale or service is recognized in the particular industry as a retail sale or service." 81st Congress, 1st Session, House of Representatives, Report No. 1453, Fair Labor Standards Amendments of 1949, October 17, 1949, Pages 24–25.

Counsel for the defendant conceded during the argument that the defendant's activities do not meet the first of the foregoing tests. Counsel concedes and the facts show that much more than 50% of defendant's sales or services are made beyond the borders of the State of Tennessee. The attorneys for both parties agree that the proof is silent as to whether defendant's activities meet the third test. That is, there is no proof on the question as to whether 75% of defendant's dollar volume of sales of services is recognized in the particular industry as retail sales or services.

Counsel for the plaintiff contends that the defendant's activities fail to meet the second test, which is denied by counsel for defendant. It will be observed that the second test provides that in order for an establishment to be exempt not less than 75% of its annual dollar volume of services must not be for resale. It is not necessary to resolve the parties' contention with respect to the second test since the facts show that the defendant's activities fail to meet the first test, and proof is silent as to the third test, the burden of proof being upon defendant to show that his activities meet all of the three tests.

■ Defendant's business has none of the attributes of a service establishment. Walling v. Allied Messenger Service, Inc., D.C., 47 F.Supp. 773; Hanzely v. Hooven Letters, Inc., City Ct., 44 N.Y.S.2d 398; Bloemer v. Ezell, D.C.Ky., 112 F.Supp. 814; Tobin v. Household Finance Corp., D.C., 106 F.Supp. 541.

■ One other question should be mentioned. Defendant contends that the Court should not consider activities of defendant which have occurred since the filing of the suit on August 4, 1952. The facts per-

taining to these activities are relevant to the question of whether plaintiff's prayer for a permanent injunction should be granted. The stipulations show that defendant intends to continue his activities without keeping records as provided by the regulations of the Wage and Hour Division and without paying the minimum wages for straight time to some of his employees, and without paying time and one-half for all work in excess of a 40-hour week.

In this situation the prayer of the complaint for a permanent injunction should be granted.

Accordingly, an order will be prepared and submitted.