336 F.Supp. 1119 (1972)
James G. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,
v.
Ursula J. RANCOURT, Defendant.
Civ. A. No. 4005.
United States District Court, D. Rhode Island.
January 14, 1972.
*1120 Albert H. Ross, Regional Sol., U. S. Dept. of Labor, Floyd G. Ansley, James G. Johnston, Attys., U. S. Dept. of Labor, Boston, Mass., for plaintiff.
Joseph E. Marran, Jr., Pawtucket, R. I., for defendant.

OPINION
DAY, District Judge.
This is an action by the Secretary of Labor brought under the provisions of Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 217, to enjoin the defendant from violating the minimum wage and record keeping provisions thereof with respect to employees engaged in typing labels and envelopes in their homes and to restrain the withholding of alleged unpaid wages due to certain of her alleged employees.
The evidence during the trial of this action established that for some years prior to 1967 the defendant was engaged in the business of offering typing services to the general public and performed work on a contractual basis through the use of typists working in their respective homes. It was customary practice of said typists to pick up the various articles to be typed (generally consisting of the typing of addresses on envelopes and Cheshire labels, so-called) at the defendant's home to perform the work in *1121 their respective homes and to return the completed work to the defendant. The defendant would then deliver the finished typed materials to her customers.
The evidence further establishes that the defendant in late 1966 entered into an agreement with Mercury Mail Advertising, Inc., (hereinafter "Mercury"), with a place of business in Pawtucket, Rhode Island, which was engaged in the business of supplying its customers with certain advertising and mailing services. Its services consisted of sending said advertising materials to places throughout the United States. Under the terms of said agreement the defendant was to furnish the typing services required by Mercury with primary emphasis on the addressing of Cheshire labels. The defendant retained typists to assist her in the work of typing names and addresses on said labels, and upon its completion returned them to Mercury for the affixing of said labels to envelopes, the insertion of advertising materials, post-metering and delivering them to the post office for mailing to the named addressees throughout the United States.
The evidence further shows that during the period from January 1, 1967 through September 9, 1968, the defendant retained the services of Gail Carr, Virginia Harris, Kathleen Davey, Jean Lopes, Angela Medeiros, Muriel Yanovitch, and forty-two (42) other individuals to type names and addresses upon said labels. Each of them typed said labels almost exclusively. They were compensated for their work at the piece rate of $7.00 per thousand labels in 1967 and at the rate of $8.00 per thousand labels beginning February 1, 1968. The defendant supplied the labels and the names and addresses to be typed thereon, unilaterally set the rate at which said typists would be compensated for their work and the date on which such work would be completed.
Gail Carr worked for the defendant from early in January, 1967 until July, 1968. She was paid for her services at the rate of $7.00 per thousand for labels until February 1, 1968, after which she was paid at the rate of $8.00 per thousand, said piece rate being fixed by the defendant. She testified her best production rate was about 140 labels per hour, and expressed the opinion that her average of production during said period was about 120 labels per hour. She also testified that the names and addresses were of persons who resided throughout the United States.
Virginia Harris testified that she typed said labels in her home from June, 1967 through July, 1968 and that she was compensated for her services at the same rates during said period. She testified that her production rate was between 100 and 150 labels per hour if she "really pushed" and had no interruptions. She believed her average to have been 125 labels per hour. She also testified that the addresses on said labels were "all over the United States".
Kathleen Davey worked at the same piece rate compensation from April, 1967 to September, 1968. Her production was "about 100" labels per hour on the average. The addresses typed by her were in the majority outside the state of Rhode Island.
Jean Lopes worked for the defendant during the period from June 1, 1967 to September 9, 1968. She was paid the same piece rate compensation and testified that her hourly production "was between 125, and maybe 150, 175 depending on what kind of a day and what kind of a list".
Angela Medeiros worked for the defendant during the months of July and August, 1967. She testified her production rate was "between 100 and 125 labels per hour if uninterrupted".
Muriel Yanovitch worked for the defendant during the months of June, July and August, 1967. Her piece rate of production was between 100 and 125 labels per hour.
Eugene Voll, the President of Mercury, testified that since late 1966 or early in January, 1967, the defendant had done Mercury's outside typing, including the addressing of said labels. He further *1122 testified that said labels were placed on envelopes in which advertising materials were inserted and were sent to various places throughout the United States. He also said that dates for the completion of the typing involved and the piece rate paid by Mercury to the defendant were negotiated with her.
The defendant testified that she became an independent contractor with Mercury in 1964, and began to devote most of her time to the production of addressed labels and envelopes for it at the rate of $10.00 per thousand of said labels and envelopes in 1967 and $11.00 per thousand thereof in 1968. She further testified that she did not regard said typists as her employees, and that she kept no records as to the time spent by anyone of them in typing said labels.
She also testified that she did keep records of the amounts paid to each of said typists and that in 1967 they were paid for their work at the rate of $7.00 per thousand of said labels and after February, 1, 1968 at the rate of $8.00 per thousand. She claimed that each of said labels contained approximately 10 words and expressed the opinion that the average typist could type 200 labels per hour.
Section 3 of said Fair Labor Standards Act, 29 U.S.C. § 203, provides in pertinent part as follows:
"As used in this chapter
* * * * * *
(d) `Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . .
(e) `Employee' includes any individual employed by an employer.
* * * * * *
(g) `Employ' includes to suffer or permit to work."
From the evidence adduced during the trial it is clear that the servicse provided by each of said typists was an integral part of the defendant's business. Without those services she could not complete the work which she had contracted to perform for Mercury. Her profit on this work is shown by the fact that she retained $3.00 of the price per thousand of labels paid to her by Mercury. In 1967 she was paid at the rate of $10.00 per thousand and paid said typists $7.00 per thousand. During 1968 she was paid $11.00 per thousand, and beginning on February 1, 1968, paid them $8.00 per thousand. Said typists had no investments in facilities or supplies except for their manual typewriters.
The defendant unilaterally set the piece rate to be paid to said typists and designated the completion dates for said work. In my opinion said typists were employees under the provisions of said Fair Labor Standards Act. Goldberg v. Whitaker House Cooperative Inc., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), reh. den. 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368; Shultz v. Hinojosa, 432 F.2d 259 (5th Cir. 1970); Tobin v. Anthony-Williams Mfg. Co., 196 F.2d 547 (8th Cir. 1952); Tobin v. La Duke, 190 F.2d 677 (9th Cir. 1951); Walling v. Twyeffort, Inc., 158 F.2d 944 (2nd Cir. 1947); Fleming v. Palmer, 123 F.2d 749 (1st Cir. 1941); Mitchell v. American Republic Insurance Co., 151 F.Supp. 529 (D.C.S.D.Iowa C.D. 1957); Durkin v. Shone, 112 F.Supp. 375 (D.C.E.D.Tennessee N.D.1953).
In Durkin v. Shone, supra, the facts were strikingly similar to those in the instant case. In its opinion 112 F.Supp. at pages 377-378 the Court said:
"It is stipulated that throughout the period involved in this litigation a portion of defendant's business has included the services of individuals referred to as `home workers' in typing of labels, addressing of envelopes and the preparation of Master Ditto Sheets, such work as a general rule being performed by those individuals in their respective homes. The principal business of the defendant is the processing and getting out of mail *1123 material. As a part of this work the homeworker typed labels and addressed envelopes. This is a service required by certain of the concerns who are customers of the defendant. If such work was not performed, the defendant would likely lose this business.
* * * * * *
The conclusion is inescapable from the foregoing facts that the homeworkers are doing work for the defendant which includes them in the statutory definition of employees under the Fair Labor Standards Act. See, Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60; Walling v. Twyeffort, Inc., 2 Cir., 158 F.2d 944; Fleming v. Palmer, 1 Cir., 123 F.2d 749, certiorari denied 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739."
Additionally, the credible evidence establishes clearly that the addresses typed upon said labels were mostly located throughout the United States. Under the circumstances said typists were engaged in the production of goods for commerce and were within the coverage of said Fair Labor Standards Act. Shultz v. Merriman, 425 F.2d 228 (1st Cir. 1970); Wirtz v. White Surveying Company, 402 F.2d 145 (10 Cir. 1968); Wirtz v. A. S. Giometti & Associates, Inc., 399 F.2d 738 (5th Cir. 1968); Mitchell v. Dooley Bros., Inc., 286 F.2d 40 (1 Cir. 1960).
Defendant, during the trial, admitted that she had kept no records of the hours worked by said typists during the periods involved herein, and, further, that she was not then keeping any records of the hours being worked by other employees then doing similar work for her. Under the provisions of Section 11 (c) of said Act, 29 U.S.C. § 211(c), it was and is her responsibility to keep such records. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Wirtz v. Turner, 330 F.2d 11 (7 Cir. 1964); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721 (5th Cir. 1961).
Defendant contends that said typists are not entitled to any awards in their favor because their testimony as to hours actually worked by them is vague and speculative. In Anderson v. Mt. Clemens Pottery Co., supra, the Supreme Court held 328 U.S. at pages 687 and 688, 66 S.Ct. at page 1192:
"When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col.L.Rev. 355".
In my opinion the testimony presented by the defendant failed to negative the reasonable inferences to be drawn from the testimony of said employees as to the hours worked by them. Her method of *1124 determining the piece rate paid to said employees was predicated on her assumption that each of said employees could type 50 words per minute although she never observed any of them typing said labels. She further erroneously assumed that each of said labels required only 10 words to be typed thereon. An examination of the lists of addresses introduced into evidence shows that the number of words per label on the average was more than 14 words per label. At best her testimony to the effect that each of them could type 50 words per minute was a mere generalization as to what someone else might possibly be able to do. Such testimony is clearly not sufficient to "negative the reasonableness of the inference to be drawn from the employee's evidence". Anderson v. Mt. Clemens Battery Co., supra, 328 U.S. at pages 687, 688, 66 S.Ct. at page 1192; Bledsoe v. Wirtz, 384 F.2d 767 (10 Cir. 1967).
The evidence in this case clearly establishes the number of labels produced by each of said employees during the periods herein involved. There remains the problem of determining the amount of back wages due each of them. Although I realize that said amounts cannot be precisely determined, it is my duty to determine such amount as definitely as is possible under the circumstances. In my opinion this can be accomplished by translating the piece rate production into an hourly rate and thereby determine the deficiency in the hourly rate paid to each of said employees for the hours worked by them. For the purposes of these determinations I shall accept the testimony of each of said employees as to her highest hourly production rate.
Gail Carr testified her highest production rate was 140 labels per hour. Based upon this production rate, she worked 774 hours during the period between January 1, 1967 and February 1, 1968. For her work during this period she was paid at the rate of 98 cents per hour instead of the minimum wage of $1.40 per hour. For this period she is entitled to an award of $325.08 as back wages. For the period beginning February 1, 1968 and ending September 6, 1968, she worked 247 hours for which she was paid at the rate of $1.12 per hour instead of the minimum hourly rate of $1.60. For this period she is entitled to recover the sum of $118.56, making a total of $443.64 as back wages due her.
Virginia Harris testified that her highest production rate was 150 labels per hour. At this production rate she worked 163 hours between January 1, 1967 and February 1, 1968. For her work during this period she was paid at the rate of $1.05 per hour instead of $1.40 per hour. For her work during this period she is entitled to an award of $57.05 as back wages. For the period beginning February 1, 1968 and ending September 6, 1968, she worked 125 hours for which she was paid at the rate of $1.20 per hour instead of the minimum hourly rate of $1.60. For this period she is entitled to recover the sum of $50.00, making a total of $107.05 as back wages due to her.
Kathleen Davey testified that her average production was about 100 labels per hour. Between February 1, 1968 to September 6, 1968 she worked 231 hours and was paid at the rate of 80 cents per hour instead of the minimum hourly wage of $1.60. She is entitled to recover the sum of $184.80 as back wages.
According to Jean Lopes her highest production rate was 175 labels per hour. During the period beginning January 1, 1967 and ending February 1, 1968, she worked 108 hours. For her work during this period she was paid at the rate of $1.22½ per hour instead of $1.40. For her work during this period she is entitled to an award of $18.90. For the period beginning February 1, 1968 and ending September 6, 1968, she worked 211½ hours for which she was compensated at the rate of $1.40 per hour instead of $1.60 per hour. For this period she is entitled to recover the sum of $42.30, making a total of $61.20.
*1125 Angela Medeiros testified that her highest production rate was 125 labels per hour. Based upon this rate of production, she worked 134½ hours during the period from January 1, 1967 to February 1, 1968, for which she was paid at the rate of 87½ cents per hour instead of $1.40 per hour. For this period she is entitled to an award of $70.61.
Muriel Yanovitch worked as a typist for the defendant during the period beginning January 1, 1967 and ending February 1, 1968. According to her testimony her best production rate was 125 labels per hour. During this period she worked 169 hours for which she was paid at the rate of 87½ cents per hour instead of the minimum wage of $1.40 per hour. For this work she is entitled to an award of $88.73 as back wages.
I find and conclude that the plaintiff is entitled to an injunction enjoining the defendant from further withholding the amounts which I have found due and payable to the above named former employees of the defendant, and directing the payments by the defendant of said amounts to the plaintiff immediately for the benefit of said former employees. After considering all of the circumstances of this case, no interest is allowed on said amounts found by me to be payable to said former employees. Clifton D. Mayhew, Inc. v. Wirtz, 413 F. 2d 658 (4 Cir. 1969).
During the trial of this action defendant contended that said Fair Labor Standards Act does not apply to said employees. Her failure to keep proper records in violation of Section 15(a) (2) of said Act, 29 U.S.C. § 215(a) (2), and to pay employees the minimum wages in violation of Section 15(a) (5) of said Act, 29 U.S.C. § 215(a) (5), will probably continue unless she is enjoined from continuing to do so. In my opinion the plaintiff is entitled to an injunction enjoining the defendant from further violations of the provisions of Sections 15 (a) (2) and 15(a) (5) of said Fair Labor Standards Act.