William E. **BROCK**, Secretary of Labor, United States Department of Labor, Plantiff–Appellee,

v.

**SUPERIOR CARE, INC.**; National Nursing Services, Inc.; Ann T. Mittasch, Individually and as President; and Robert M. Rubin, Individually and as Secretary and Treasurer, Defendants–Appellants.

No. 407, Docket 87–6195.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1987.

Decided Feb. 16, 1988.

Opinion on Motion to Clarify April 5, 1988.

Ronald M. Green, New York City (Epstein Becker Borsody & Green, New York City, on the brief), for defendants-appellants.

William J. Stone, U.S. Dept. of Labor, Washington, D.C. (Patricia M. Rodenhausen, Regional Sol., George R. Salem, Sol. of Labor, Monica Gallagher, Associate Sol., Linda Jan S. Pack, U.S. Dept. of Labor, Washington, D.C., on the brief), for plaintiff-appellee.

Before NEWMAN and CARDAMONE, Circuit Judges, and GRAY, District Judge.[*]

JON O. NEWMAN, Circuit Judge:

Defendant Superior Care, Inc., two of its officers, and its wholly owned subsidiary (collectively "Superior Care") appeal from a judgment of the District Court for the Eastern District of New York (Leonard D. Wexler, Judge), entered after a bench trial, enjoining it from violating the record-keeping and overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 211(c), 215(a)(2), and 215(a)(5) (1982 & Supp. III 1985), and awarding liquidated damages. Superior Care is a health-care service that provides nurses to individuals, hospitals, and nursing homes. The District Court found that the nurses were "employees" subject to the FLSA and that the defendants' violations were willful for purposes of the three-year statute of limitations. The Court enjoined Superior Care from withholding $697,140.66 of unpaid overtime compensation and awarded an equal amount as statutory liquidated damages. We agree with the District Court that the nurses are employees covered by the FLSA and that Superior Care's violations of the Act were willful. However, we conclude that the Secretary may not collect liquidated damages because the Secretary did not bring this action under the provision authorizing such damages.

## BACKGROUND

Superior Care is a New York corporation engaged in the business of referring temporary health-care personnel, primarily nurses, to individual patients, hospitals, nursing homes, and other health care institutions. Nurses who wish to work for Superior Care are interviewed and placed on a roster. As work opportunities become available, Superior Care assigns nurses from the list. The nurses are free to decline a proposed referral for any reason. Once an assignment is accepted, the nurse reports directly to the patient, where treatment is prescribed by the patient's physician. Superior Care supervises its nurses through visits to the job sites once or twice a month. Nurses are also required to submit to Superior Care patient care notes that the nurses keep pursuant to state and federal law. The length of a particular assignment depends primarily upon the patient's condition and may vary from less than a week to several months.

Patients contract directly with Superior Care, not with the nurses, and the nurses are prohibited from entering into private pay arrangements with the patients. The nurses are paid an hourly wage by Superior Care. Most of the time, the hourly wage is set by Superior Care, depending on the market conditions in the local geographic area. Occasionally, if an assignment involves special patient treatment or an inconvenient location, nurses may be able to negotiate a pay rate just for that job. Superior Care permits its nurses to hold other jobs, including positions with other nursing-care providers. Many of the nurses take advantage of this opportunity and are listed with several health-care providers simultaneously. Thus, many of the nurses work for Superior Care only several weeks a year, and few rely on Superior Care for their primary source of income.

During the relevant time periods, Superior Care maintained two payrolls for its nursing staff. One payroll included nurses for whom employee payroll taxes were deducted ("taxed nurses"), and the other payroll included nurses for whom no payroll taxes were deducted ("nontaxed nurses"). Superior Care considered the taxed nurses to be employees and did not permit them to work overtime. The nontaxed nurses were permitted to work overtime, but they were considered to be independent contractors and consequently were not paid time and a half for overtime hours. The determination whether a nurse appeared on the taxed or nontaxed payroll was usually made unilaterally by Superior Care or, at times, at a

---

[*] The Honorable William P. Gray of the United States District Court for the Central District of California, sitting by designation.

nurse's request. The parties stipulated that the two sets of nurses perform exactly the same work.

Superior Care was first investigated by the Department of Labor in 1979 at which time no FLSA violations were found. In February 1980 and January 1981, additional investigations were conducted, overtime violations were discovered, and Superior Care agreed to pay approximately $32,000 in back wages and to comply with the FLSA in the future. Richard Mormile, the Department of Labor compliance officer who conducted the 1980 and 1981 investigations, testified that during those investigations he was shown the records of only the taxed employee nurses. Superior Care inquired of Mormile whether the taxed nurses could be treated as independent contractors rather than employees. Mormile advised that the nurses were employees. He suggested that if Superior Care disagreed, it could obtain a formal opinion on the matter from the Department of Labor's Regional Solicitor's office. Superior Care never sought such an opinion.

The existence of the two separate payrolls was discovered during a subsequent investigation conducted from November of 1981 until mid–1982. During this investigation, Mormile learned that several hundred nontaxed nurses were being paid straight-time wages for overtime hours. On the basis of this investigation, the Secretary of Labor initiated the present suit. The Secretary's complaint alleged jurisdiction under section 17 of the FLSA, 29 U.S. C. § 217, and asked for an injunction restraining Superior Care from withholding the unpaid overtime wages. The complaint also alluded to the possibility of liquidated damages, although it did not mention section 16 of the Act, which authorizes such a remedy.

The District Court found that the nurses were "employees" within the meaning of the FLSA and that the exemption for bona fide professional employees, 29 U.S.C. § 213(a)(1) (1982), was unavailable. The District Court further determined that Superior Care's overtime and record-keeping violations were willful, thereby making ap-

plicable a three-year statute of limitations period, 29 U.S.C. § 255(a) (1982). The Court enjoined Superior Care from withholding $697,140.66 in back pay owed from December 1980. The Court also awarded an equal amount as statutory liquidated damages. 29 U.S.C. § 216(c) (1982).

## DISCUSSION

On this appeal, Superior Care contends that (1) the nurses are independent contractors, not subject to the FLSA, (2) even if the nurses are employees, they are bona fide professional employees exempt from the Act's overtime pay requirements, (3) any violations of the Act were not willful and should therefore have been subject to a two-year statute of limitations, and (4) liquidated damages should not have been awarded because the Secretary failed to allege a violation of section 16 of the Act authorizing such an award. We conclude that only Superior Care's contention as to liquidated damages has merit; the decision of the District Court was in all other respects correct.

### A. Employment Status

■ The FLSA defines "employee" as "any individual employed by an employer," and to "employ" as including "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g) (1982 & Supp. III 1985). The definition is necessarily a broad one in accordance with the remedial purpose of the Act. See United States v. Rosenwasser, 323 U.S. 360, 363, 65 S.Ct. 295, 296, 89 L.Ed. 301 (1945); Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754 (9th Cir.1979).

Several factors are relevant in determining whether individuals are "employees" or independent contractors for purposes of the FLSA. These factors, derived from United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) (Social Security Act), and known as the "economic reality test," include: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and inde-

pendent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. *See id.* at 716, 67 S.Ct. at 1469; *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947); *Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376, 1382–83 (3d Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985); *Real v. Driscoll Strawberry Associates, Inc., supra,* 603 F.2d at 754; *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976); *cf. Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984) (considering somewhat different factors in "economic reality" test where question was whether an employment relationship existed between a prison inmate and an outside employer). No one of these factors is dispositive; rather, the test is based on a totality of the circumstances. *See Rutherford Food Corp. v. McComb, supra,* 331 U.S. at 730, 67 S.Ct. at 1476; *Usery v. Pilgrim Equipment Co., Inc., supra,* 527 F.2d at 1311. The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves. *See Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947) (Social Security Act); *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir.1981) (FLSA).

The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law. Thus, a district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of employment status is *de novo.* *See Brock v. Mr. W. Fireworks, Inc.,* 814 F.2d 1042, 1043–45 (5th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987); *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983). In the present case, the District Judge properly looked to the economic real-

ity test and the *Silk* factors in deciding that the nurses were employees. Superior Care contends that some of his findings of fact were clearly erroneous and that he relied on irrelevant evidence. We disagree.

■ At the outset, we reject Superior Care's claim that the trial judge impermissibly relied on evidence of employee status beyond the five economic reality factors set forth in *Silk* and subsequent cases. The District Judge thought it significant that Superior Care had treated its taxed nurses as employees and that these nurses perform exactly the same work as the non-taxed nurses. We agree. The factors that have been identified by various courts in applying the economic reality test are not exclusive. Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided. *See Brock v. Mr. W. Fireworks, Inc., supra,* 814 F.2d at 1043; *Usery v. Pilgrim Equipment Co., Inc., supra,* 527 F.2d at 1311. Though an employer's self-serving label of workers as independent contractors is not controlling, *see, e.g., Real v. Driscoll Strawberry Associates, Inc., supra,* 603 F.2d at 755; *Usery v. Pilgrim Equipment Co., Inc., supra,* 527 F.2d at 1315, an employer's admission that his workers are employees covered by the FLSA is highly probative. *See Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 268 n. 5 (5th Cir.), *modified on other grounds on rehearing,* 826 F.2d 2 (1987).

■ Analysis of the five economic reality factors fully supports the District Court's conclusion that the nurses are employees. The District Judge found, without dispute, that the nurses had no opportunity for profit or loss and that their investment in the business was negligible. With respect to the importance of the nurse's role, Judge Wexler found that "the services rendered by the nurses constituted the most integral part of Superior Care's business, which is to provide health care personnel on request." Both of these findings are amply supported in the record, and both weigh heavily in favor of the District

Judge's conclusion that the nurses are employees.

As to control, the District Court found that Superior Care unilaterally dictated the nurses' hourly wage, limited working hours to 40 per week where nurses claimed they were owed overtime, and supervised the nurses by monitoring their patient care notes and by visiting job sites. Superior Care argues that the finding of control is clearly erroneous because the parties stipulated that supervisory visits to the job sites were infrequent. Though visits to the job sites occurred only once or twice a month, Superior Care unequivocally expressed the right to supervise the nurses' work, and the nurses were well aware that they were subject to such checks as well as to regular review of their nursing notes. An employer does not need to look over his workers' shoulders every day in order to exercise control. *See Donovan v. DialAmerica Marketing, Inc., supra,* 757 F.2d at 1383–84 (where nature of home research industry precludes direct supervision, lack of direct control over manner of work does not weigh in favor of independent contractor status).

The remaining two factors, skill and independent initiative, and permanence of the work relationship, were not expressly considered by the District Court. Superior Care argues that these factors weigh decisively in its favor. We conclude that though these factors may weigh slightly in favor of independent contractor status, they do not tip the balance in favor of Superior Care.

As the Secretary concedes, the nurses are skilled workers who require several years of specialized training. However, the fact that workers are skilled is not itself indicative of independent contractor status. A variety of skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under the FLSA. *See, e.g., Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 666–67 (5th Cir.1983) (welders); *Walling v. Twyeffort, Inc.,* 158 F.2d 944 (2d Cir.), *cert. denied,* 331 U.S. 851, 67 S.Ct. 1727, 91 L.Ed. 1859 (1947) (tailors);

*Dunlop v. Imperial Tool and Manufacturing, Inc.,* 77 Lab.Cas. ¶ 33,304 (N.D. Tex.1975) [available on WESTLAW, 1975 WL 1173] (tool and die maker); *cf. Donovan v. DialAmerica Marketing, Inc., supra,* 757 F.2d at 1387 (where distributors in home research business exercised "business-like initiative," in recruiting new home researchers, skill factor weighed in favor of independent contractor status). The nurses in the present case possess technical skills but nothing in the record reveals that they used these skills in any independent way. Rather, they depended entirely on referrals to find job assignments, and Superior Care in turn controlled the terms and conditions of the employment relationship. As a matter of economic reality, the nurses' training does not weigh significantly in favor of independent contractor status.

With respect to permanence of the working relationship, the record indicates that the nurses are a transient work force. They typically work for several employers, most work for Superior Care only a small percentage of the time (78% worked 13 weeks or less in 1982), they earn relatively little from Superior Care (88% earned less than $5,000 from Superior Care in 1982), and few maintain continuing relationships with Superior Care (90% turnover rate in three-year period). Nevertheless, these facts are not dispositive of independent contractor status. We have previously said that employees may work for more than one employer without losing their benefits under the FLSA. *Walling v. Twyeffort, Inc., supra,* 158 F.2d at 947; *see also* 29 C.F.R. § 791.2 (1987). Nor has the fact that the worker does not rely on the employer for his primary source of income require a finding of independent contractor status. *See Donovan v. DialAmerica Marketing, Inc., supra,* 757 F.2d at 1385 (home researchers); *Halferty v. Pulse Drug Co., Inc., supra,* 821 F.2d at 267–68 (night ambulance dispatcher). Finally, even where work forces are transient, the workers have been deemed employees where the lack of permanence is due to operational characteristics intrinsic to the industry rather than to the workers' own

business initiative, *see Brock v. Mr. W. Fireworks, Inc., supra,* 814 F.2d at 1053–54 (firework stand operators employees notwithstanding 80% turnover because of seasonal nature of work). In the present case, the fact that these nurses are a transient work force reflects the nature of their profession and not their success in marketing their skills independently.

The totality of the circumstances reveals that as a matter of economic reality the nurses are employees. Superior Care treats them as employees. Superior Care exercises substantial control over the manner and conditions of their work. They have no opportunity for profit or loss, nor do they have any independent investment in the business. Their services are the most integral part of Superior Care's operation. Under these circumstances, it cannot be said that the nurses are in business for themselves.

B. Professional Exemption

■ Superior Care next argues that even if the nurses are "employees" under the FLSA, they are bona fide professional employees exempt from the overtime pay requirements of the FLSA pursuant to section 13(a)(1) of the Act, 29 U.S.C. § 213(a)(1) (1982). Section 13(a)(1) provides an exemption for "any employee employed in a bona fide ... professional capacity ... (as such terms are defined and delimited ... by regulations of the Secretary ... )." One of the criteria in the regulations for bona fide professional employees is compensation for services "on a salary or fee basis at a rate of not less than $170 per week...." 29 C.F.R. § 541.3 (1987).[1] Compensation on a salaried basis occurs when an employee regularly receives, each pay period, a predetermined amount, not subject to reduction because of variations in the quality or quantity of work performed. 29 C.F.R. § 541.118 (1987). An employee is paid on a fee basis when he receives a fixed sum for a single job re-

gardless of the time required for its completion. 29 C.F.R. § 541.313 (1987). Here, the nurses do not come within the definition of bona fide professional employees in section 541.3 because they are paid on an hourly basis and not by fee or salary. *See Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983) (pharmacists paid an hourly rate).

C. Statute of Limitations

■ The FLSA provides a statute of limitations of two years unless the cause of action arises from a "willful violation," in which case a three-year limitations period applies. 29 U.S.C. § 255(a) (1982). Thus, the Secretary may recover an additional year of back wages when a violation is willful. In the present case, the District Court determined that Superior Care's violations were willful because it had been put on notice of its noncompliance with the Act during the 1980 and 1981 investigations, yet had continued to pay nurses at straight time rates for overtime work. The District Court awarded back pay for violations from December 1980, three years prior to the filing of the Secretary's suit.

Superior Care argues that the District Judge applied the incorrect legal standard in deciding whether the violations were willful for purposes of the FLSA statute of limitations. The District Court applied the standard established by this Court in *Donovan v. Carls Drug Co., Inc., supra,* which ruled that "[e]mployers 'willfully' violate the FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements." 703 F.2d at 652. Superior Care points out that subsequent to *Carls Drug* the Supreme Court adopted a slightly more rigorous test of "willfulness" for purposes of determining whether a plaintiff is entitled to an award of liquidated damages under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b)

---

1. Payment on a salary or fee basis is not a requisite to bona fide professional employee status in the case of "an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof...." 29 C.F.R. § 541.3(e) (1987). However, this exception does not apply to nurses. 29 C.F.R. § 541.314(c) (1987).

(1982). *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Under this test, an ADEA violation is "willful" for purposes of awarding liquidated damages if the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 126, 105 S.Ct. at 624. In *Thurston,* the Court made no ruling as to whether its "willfulness" standard applies to the FLSA. The Court emphasized the difference between the liquidated damages provisions of the ADEA and the FLSA, noting that the former requires proof of willfulness and the latter provides that such damages are mandatory. *Id.* at 125, 105 S.Ct. at 623. The Court also noted without comment that the courts of appeals are divided on the issue whether the "willfulness" standard applicable to liquidated damages under the ADEA applies to the determination of the applicable ADEA statute of limitations. *Id.* at 128 n. 21, 105 S.Ct. at 625 n. 21.

This Court recently considered the appropriate "willfulness" standard for purposes of the ADEA statute of limitations in light of *Thurston.* *Russo v. Trifari, Krussman & Fishel, Inc.,* 837 F.2d 40, (2d Cir.1988). We held that the *Thurston* standard of willfulness for ADEA liquidated damages applies to willfulness for the ADEA statute of limitations. In making that determination, we acknowledged that, in light of *Thurston,* we were not applying the "willfulness" standard that *Carls Drug* had established for purposes of the FLSA statute of limitations. We reckoned with the *Carls Drug* "willfulness" standard in *Russo* because we recognized that the limitations provisions of both the ADEA and the FLSA are identical; the limitations provision for FLSA actions is contained in section 6 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 255(a) (1982), and the ADEA incorporates section 6 by explicit reference, *id.* § 626(e)(1). Now that *Russo* has applied the *Thurston* standard to the ADEA statute of limitations, we are obliged to apply that same standard to the FLSA statute of limitations, since the two limitations provisions not only use identical wording, they are in fact the same provision. Thus, as in *Russo,* a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act.

*See Russo v. Trifari, Krussman & Fishel, Inc., supra,* 837 F.2d 40, 44–45; *Halferty v. Pulse Drug Co., Inc.,* 826 F.2d 2 (5th Cir.1987) (on rehearing); *Brock v. Richland Shoe Co.,* 799 F.2d 80 (3d Cir.1986), *cert. granted,* —— U.S. ——, 108 S.Ct. 63, 98 L.Ed.2d 27 (1987).

Even under the somewhat heightened standard of "reckless disregard," however, Superior Care's violations of the FLSA were unquestionably willful. It is undisputed that Superior Care was on actual notice of the requirements of the FLSA by virtue of its earlier violations, its agreement to pay $32,000 in back pay, and its promise to comply with the Act in the future. Moreover, the Department of Labor compliance officer who conducted the 1980 and 1981 investigations specifically advised Superior Care officials at that time that the nurses were employees. The compliance officer even suggested that Superior Care obtain an opinion letter from the Department if it disagreed, but Superior Care never pursued this option. Failure to obtain a ruling, even when one has not been suggested, has resulted in a determination of willful violation under the reckless disregard standard. *See Brock v. Wilamowsky,* 833 F.2d 11 (2d Cir.1987).

D. Liquidated Damages

Finally, Superior Care contends that the District Court's award of liquidated damages was improper because the Secretary framed his complaint under a provision of the FLSA that does not permit such damages. Superior Care argues that because the choice of remedies implicates a defendant's constitutional right to a jury trial, the Secretary is limited to the specific cause of action that he alleges. We agree.

The FLSA establishes three distinct causes of action against employers who have committed violations of the Act: (1) an injured employee may sue under section 16(b), 29 U.S.C. § 216(b) (1982), for unpaid overtime or minimum wages, plus an equal amount as liquidated damages; (2) the Secretary of Labor may sue under section 16(c), 29 U.S.C. § 216(c) (1982), on behalf of an employee, for unpaid overtime or minimum wages, plus an equal amount as liquidated damages; and (3) the Secretary may sue under section 17, 29 U.S.C. § 217 (1982), for injunctive relief, including an injunction against the withholding of previously unpaid minimum or overtime wages.[2]

---

**2.** Section 17 is framed as a jurisdictional provision, providing the district courts with jurisdiction for suits by the Secretary seeking an injunction. Sections 16(b) and 16(c) create causes of

action for damages, authorizing such suits "in any court of competent jurisdiction." 29 U.S.C. § 216(c) (1982).

See Castillo v. Givens, 704 F.2d 181, 186 n. 11 (5th Cir.), cert. denied, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); Marshall v. Hanioti Hotel Corp., 490 F.Supp. 1020, 1022 (N.D. Ga.1980). Under sections 16(b) and 16(c) employers "shall be liable" for liquidated damages in an amount equal to unpaid back wages, but the district judge, in his discretion, may reduce the amount if the employer shows that his violations were in good faith.[3] 29 U.S.C. § 260 (1982). In no case may the trial judge award liquidated damages greater than the amount of underlying back pay liability. Id. The legislative history of the FLSA reveals that Congress intended to permit recovery of liquidated damages only in suits under sections 16(b) and 16(c), the two provisions expressly authorizing such damages; when the Secretary sues under section 17 for injunctive relief, liquidated damages are unavailable. See S.Rep. No. 145, 87th Cong., 1st Sess. (1961), reprinted in 1961 U.S. Code Cong. & Admin. News 1620, 1659; Donovan v. Brown Equipment and Service Tools, Inc., 666 F.2d 148, 156 (5th Cir.1982); E.E.O.C. v. Gilbarco, Inc., 615 F.2d 985, 991 (4th Cir.1980).

▮ The defendant's right to a jury trial depends upon which of the three FLSA causes of action is pursued. Suits under section 17 for injunctive relief, even though they may result in an order requiring the employer to remit unpaid wages, have been considered equitable in nature; the award of back pay, without liquidated damages, is in the nature of restitution, and the defendant has no right to a jury trial. See, e.g., In re Don Hamilton Oil Co., 783 F.2d 151 (8th Cir.1986); Paradise Valley Investigation and Patrol Services, Inc. v. United States District Court, District of Arizona, 521 F.2d 1342 (9th Cir.1975); Wirtz v. Jones, 340 F.2d 901 (5th Cir.1965); Marshall v. Kreten Char–Broil, Inc., 507 F.Supp. 445 (E.D.N.Y.1980). Suits by an employee or by the Secretary for back wages under section 16, in contrast, have been considered to be actions at law, and the employer has a right to a jury. See Lorillard v. Pons, 434 U.S. 575, 580 & n. 7, 98 S.Ct. 866, 870 & n. 7 (1978); E.E.O.C. v. Corry Jamestown Corp., 719 F.2d 1219, 1221 (3d Cir.1983); Marshall v. Hanioti Hotel Corp., supra, 490 F.Supp. at 1023; 5 Moore's Federal Practice ¶ 38.27, at 38–220 to 38–221 (2d ed. 1986). However,

since an award of liquidated damages under section 16 is within the discretion of the district judge, 29 U.S.C. § 260, no right to a jury is available on that issue. See McClanahan v. Mathews, 440 F.2d 320, 322 (6th Cir.1971); Donovan v. River City Construction Co., 101 Lab.Cas. (CCH) ¶ 34,591 (E.D.N.C.1984). [Available on WESTLAW, 1984 WL 3177]. The jury is required only to determine liability for and the amount of an award of back pay. The statutory scheme gives the Secretary a choice: If he wants to recover liquidated damages, he can sue under section 16(c), in which case the employer is entitled to a jury trial on the back pay award; if the Secretary prefers not to have a jury trial, he can sue for an injunction under section 17 and obtain a back pay award as an equitable remedy incidental to the injunction.

In the present case, the Secretary's complaint stated that "[j]urisdiction of this action is conferred upon the Court by section 17 of the Act." The complaint did not make any reference to section 16, although in the claim for relief it stated that "[a]dditional amounts of backwages [sic] and liquidated damages may be owed to certain present and former employees ... who are presently unknown to plaintiff...." (Emphasis added). Moreover, a list of injured employees was annexed to the complaint, a procedural requirement of section 16 but not section 17. Prior to trial, Superior Care filed a motion in limine seeking to exclude any evidence pertaining to liquidated damages on the theory that the Secretary had failed to proceed under the section authorizing such an award. The motion was denied and the trial judge, construing the Secretary's complaint as alleging a cause of action under both sections 16(c) and 17, ultimately ordered Superior Care to pay liquidated damages in an amount equal to the unpaid overtime compensation.

▮ The Secretary, acknowledging that liquidated damages are available only under section 16, argues that the complaint should be read as invoking section 17 for an injunction against withholding back pay and section 16 for the additional remedy of liquidated damages. Although the Secretary's position would have been clearer in the District Court if the complaint had invoked section 16 as the basis for liquidated damages, we agree that the failure to cite

3. As used in the FLSA "liquidated damages" is something of a misnomer. It is not a sum certain, determined in advance as a means of liquidating damages that might be incurred in the future. It is an award of special or exemplary damages added to the normal damages.

this provision does not necessarily preclude relief to which the Secretary would otherwise be entitled. *See* Fed.R.Civ.P. 8, 54(c). The question remains, however, whether liquidated damages are available in a suit seeking back pay as an equitable remedy under section 17.

The FLSA does not allow liquidated damages where, as here, the employer has no right to a jury on the underlying issue of unpaid overtime compensation. As indicated above, Congress has limited the remedy of liquidated damages to actions under section 16 where the employer has a right to a jury trial on the back pay issue. Although the judge always has discretion to reduce the amount of liquidated damages for which a defendant is liable if the employer shows good faith, the statutory scheme sets the maximum amount of liquidated damages at the amount of the back pay award, which the employer is entitled to have the jury determine. *See* 29 U.S.C. §§ 216, 260. If the Secretary is permitted to collect section 16 liquidated damages in an action where the overtime wage issues are determined by the judge pursuant to section 17, then the employer is stripped of the protection that the Act provides by limiting the amount of liquidated damages to the amount of the jury's back pay award. *Marshall v. Hanioti Hotel Corp., supra,* 490 F.Supp. at 1024.

The Secretary contends that Superior Care's objections to the liquidated damages are not properly raised because Superior Care never requested a jury to determine the overtime wage award. But Superior Care had no right to ask for a jury. When confronted with the Secretary's complaint, which sought overtime wages exclusively under section 17, Superior Care correctly concluded that no jury right was available and took the position that the Secretary was thereby precluded from seeking liquidated damages, whether or not his complaint could be viewed as seeking liquidated damages under section 16. Superior Care expressed its position in its motion *in limine.* Had the Secretary wanted to be sure he could get liquidated damages, he could have amended his complaint to seek overtime wages under section 16(c). Hav-

ing elected to pursue overtime wages only under section 17, and gained what he apparently thought was the advantage of avoiding a jury trial on that component of relief,[4] the Secretary has no valid claim for liquidated damages.

The judgment of the District Court is modified to delete the award of liquidated damages and, as modified, is affirmed.

## MOTION FOR CLARIFICATION

PER CURIAM:

The Secretary of Labor has moved for clarification of our decision of February 16, 1988, to determine whether upon the remand for entry of a new judgment the Secretary is entitled to recover prejudgment interest. Our prior decision upheld the Secretary's entitlement to collect unpaid overtime wages for the benefit of the employees but disallowed an additional equal sum for liquidated damages. *Brock v. Superior Care, Inc., supra* at 1054. The Secretary contends that with liquidated damages disallowed, the judgment should now include prejudgment interest. We agree.

It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 714–16, 65 S.Ct. 895, 905–07, 89 L.Ed. 1296 (1945); *Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir.1987). Among other purposes, liquidated damages compensate for the delay in receiving wages that should have been paid. In this case liquidated damages were disallowed, not because the purposes to be served by such damages were not implicated, but solely because such damages are not available when the Secretary elects to sue under section 17 of the FLSA. Once we have disallowed liquidated damages, there is no reason to deny the Secretary the opportunity to collect prejudgment interest, which is normally awarded in FLSA suits in the absence of liquidated damages. *See Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872 (2d Cir.1988); *Donovan v. Sovereign Se-*

---

**4.** The Secretary has indicated that the complaint in this action follows the form that has long been used in actions to recover unpaid overtime and minimum wages under the FLSA. When asked at oral argument the reasons for this long-standing practice, counsel was unable to offer an explanation. In other litigation where the Secretary has similarly attempted to split his cause of action between the injunctive provi-

sions of section 17 and the liquidated damages provision of section 16(c), counsel has conceded, perhaps more candidly than here, that the Secretary finds jury trials too time consuming and so frames the complaint in order to try the case as expeditiously as possible. *See Marshall v. Hanioti Hotel Corp., supra,* 490 F.Supp. at 1025.

*curity, Ltd.,* 726 F.2d 55, 57–58 (2d Cir. 1984).

Accordingly, we recall the mandate and modify our prior decision to the extent of authorizing the District Court upon remand to consider the Secretary's request for prejudgment interest under the standards customarily applied to such claims.