**William G. CLANCEY, Nicholas J. Contakos, Francisco Dellunde, Peter A. Froehlich, Kenneth B. McDaniel, Michael Richards and Donald Taylor, Plaintiffs,**

v.

**AMERICAN MANAGEMENT ASSOCIATION, INC., Defendant.**

**No. 90 Civ. 7570 (LJF).**

United States District Court, S.D. New York.

Jan. 9, 1992.

W. Dan Boone, Liddle O'Connor Finkelstein & Robinson, New York City, for plaintiffs.

Stephen W. Feingold, Spengler Carlson Gubar Brodsky & Frischling, New York City, for defendant.

### OPINION AND ORDER

FREEH, District Judge:

In this age discrimination action, Defendant American Management Association ("AMA")[1] moves for summary judgment pursuant to Fed.R.Civ.P. 56(c). Plaintiffs oppose the motion. For the reasons stated at oral argument and below, AMA's motion is denied.

Plaintiffs allege in their complaint that AMA violated the Age Discrimination in Employment Act ("ADEA") and other New York State statutes relating to age discrimination. AMA claims that plaintiffs were independent contractors rather than employees of AMA and that the law precludes independent contractors from asserting claims under ADEA. AMA also argues that this Court should apply the hybrid, 'economic realities/right to control', test rather then the pure 'economic realities' test in determining whether plaintiffs were 'employees' or 'independent contractors'.

In opposing the motion, Plaintiffs argue that there are sufficient material facts in dispute to create a genuine issue over whether plaintiffs, as workers for AMA, were employees or independent contractors of AMA.

FACTS

Construing the record in the light most favorable to plaintiffs, the relevant facts are as follows. AMA is a not-for-profit educational organization offering services to individuals and companies interested in improving business management. In the summer of 1982, AMA eliminated their entire field sales force but over a period of time offered certain ex-employees, including plaintiffs, an opportunity to become independent contractors associated with AMA. Plaintiffs accepted AMA's offer and each entered into separate but identical sales contracts. Plaintiffs were paid on commission. AMA provided a six month start-up salary, called a "training allowance", of $2,000 per month. AMA also determined the geographic territory within which each plaintiff was permitted to sell AMA services, and plaintiffs were not permitted to represent any person or organization involved in a business similar to AMA.

AMA also required plaintiffs to attend training seminars once a year and were given manuals with scripts for on-site and telephone solicitation. Plaintiffs often received personal assistance and supervision from AMA's field marketing division. Plaintiffs were directed by AMA to report to one of AMA's two Directors of Sales. According to AMA's job description, the

1. AMA is misnamed in the caption as American Management Association, Inc.

principal function of the AMA Sales Director is to "plan, organize, staff, direct and control the activities of the Regional Representatives". Plaintiffs were all Regional Representatives.

## DISCUSSION

On a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir.1987). The party seeking summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

■ Contrary to AMA's assertion, the Court concludes that the Second Circuit does not require a different application of legal principles to ADEA and Fair Labor Standards Act ("FLSA") cases. Rather, the Second Circuit appears to have adopted the 'economic realities' standard for determining whether a worker is an employee or an independent contractor regardless of which discrimination statute a party sues under. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988). While it is true that *Brock* was an FLSA case, FLSA and ADEA have almost identical sections defining "employee". Moreover, since both statutes have a similar purpose, which is to eradicate discrimination, the Court adopts the FLSA standard applied in *Brock* to this ADEA case. *Krijn v. Pogue Simone Real Estate Co.*, 752 F.Supp. 102, 104 n. 2 (S.D.N.Y.1990).[2]

Regardless of which test the Court adopts, however, determining whether plaintiffs are employees or independent contractors is a question of law while the existence and degree of the legal factors considered are questions of fact. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988). Under the economic realities test, there are five factors to consider in determining whether individuals are em-

ployees or independent contractors. These factors were first developed in *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). The five factors are: (1) the degree of control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. 840 F.2d at 1058–59. No single factor is conclusive. Instead the court is to look at the factors in the light of the totality of the circumstances. 840 F.2d at 1059. "The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves". 840 F.2d at 1059.

■ Applying the five economic factors to this case requires weighing many material facts. For example, did plaintiffs each have an opportunity to make a profit and in turn accept the risks involved which comes from being independent? AMA asserts they did, and points to the fact that plaintiffs were not salaried workers but were paid on commission. Plaintiffs allege that they did not have a sufficient opportunity for profit because AMA's business took up all of their time. Furthermore, under their contracts with AMA, plaintiffs were not allowed to compete with AMA's competitors and had to agree to spend all of their available working time promoting AMA's product.

AMA's ability to control plaintiffs' job is the most important of the *Brock* factors. Plaintiffs contend that AMA decided where plaintiffs could sell AMA's product and prevented plaintiffs from working for any other company in competition with AMA. AMA also provided training and manuals complete with scripts as well as stationary and office supplies. Rather than contest-

**2.** *Krijn* was a Title VII case and relied on *Hyland v. New Haven Radiology Association, P.C.*, 794 F.2d 793 (2d Cir.1986). Although *Hyland* has not been overruled, the decision in *Brock* which was decided two years after *Hyland*, suggests that the Second Circuit is moving in the direction of applying the economic realities test to ADEA cases.

ing plaintiffs alleged facts, AMA in its reply brief, directs the Court's attention to a Third Circuit case, *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32 (3rd Cir.1983), which held that the same factual allegations relied on by plaintiffs in this case did not prove control over plaintiffs in that case. The Third Circuit, however, is not binding on this Court especially in this case where the Second Circuit's test for determining worker status is different.[3] Even if the tests were the same and the Third Circuit was binding, the Court would still find the cases distinguishable.

The duration of plaintiffs' working relationship with AMA is another factor which the Court must consider. If a worker's relationship with an employer appears permanent, or continues with little or no interruption for a significant period of time, than that worker's status tips toward employee and away from independent contractor. Plaintiffs in this case appeared to be permanent workers for AMA both before and after AMA terminated its sales department in 1982.[4]

The final factor to consider is whether the workers' jobs are an essential function of AMA's business. While Thomas Horton, Chairman and Chief Executive Officer of AMA, insists that AMA's Field Marketing Division, which plaintiffs were a part of, "never accounted for more than 10% of AMA's total sales volume", (Horton Aff ¶ 11), William Shaughnessy, a former Vice President of Field Marketing and Sales for AMA, claims the work performed by plaintiffs was "critical" to the business. (Shaughnessy Dep. p. 268). The fact that not even AMA's representatives can agree on the financial importance of the plaintiffs' job demonstrates that material facts are in dispute.

Looking at the totality of the factual circumstances, there exists numerous disputed material facts with respect to the genuine issue of whether plaintiffs were in business for themselves or in business for AMA. Accordingly, AMA's motion is denied.

The parties are directed to complete discovery by no later than May 1, 1992. The pretrial order must be submitted by no later than May 15, 1992, and the final pretrial conference is scheduled for May 26, 1992 at 8:30 a.m.

SO ORDERED.

---

**3.** The Third Circuit applies a hybrid test which combines economic realities with degrees of control while the Second Circuit incorporates levels of control into the economic realities of the relationship. Even under the hybrid test, the Court would deny summary judgment based upon the genuine issues of material fact which exist in this case and thus make it improper for summary judgment.

**4.** Frank Dellunde worked for AMA for thirty-one years. (Dellunde Aff. ¶ 2). William Clancey worked for AMA for sixteen years. (Clancey Aff. ¶ 2). Michael Richards and Donald Taylor each worked for AMA for eleven years. (Richards Aff. ¶ 2; Taylor Aff. 2). Peter Froehlich worked for AMA for ten years, interrupted only by a one and a half year separation. (Froehlich Aff. ¶ 2). Nicholas Contakos worked for AMA for seven years. (Contakos Aff. ¶ 2). Kenneth McDaniel worked for AMA for three years. (McDaniel Aff. ¶ 2).