CLAY, Circuit Judge, dissenting.
 

 The only issue in this interlocutory appeal is whether Plaintiffs are "employees" or "independent contractors" for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"),
 
 29 U.S.C. § 1001
 

 et seq
 
 . The majority holds that Plaintiffs are independent contractors based on its analysis of the factors set forth by
 
 Nationwide Mut. Ins. Co. v. Darden
 
 ,
 
 503 U.S. 318
 
 ,
 
 112 S.Ct. 1344
 
 ,
 
 117 L.Ed.2d 581
 
 (1992). However, because the majority (1) adopts an incorrect standard of review for district court determinations regarding whether and to what extent the
 
 Darden
 
 factors support employee or independent contractor status; (2) incorrectly analyzes
 
 Darden
 
 factors one and eight; and (3) incorrectly weighs the
 
 Darden
 
 factors, I respectfully dissent.
 

 I. Background
 

 American Family Insurance Company (hereinafter referred to as "American Family" or "Defendants") is an insurance company "whose business is selling insurance." (RE 320, District Court Opinion, PageID # 20949.)
 
 [1]
 
 Unsurprisingly, American Family's insurance agents "are core to [this] business." (
 
 Id.
 
 ) Over the last five years, American Family's insurance agents have brought in 85% of American Family's insurance premiums-approximately $5.1 billion. Yet, American Family does not provide its agents with numerous health, welfare, and retirement benefits, including "a retirement plan, 401K plan, group health plan, group dental plan, group life plan, and long-term disability plan." (
 
 Id.
 
 at PageID # 20945.) American Family claims it is not required to provide these benefits
 because it classifies its insurance agents as independent contractors, not employees, relieving it of all ERISA obligations.
 

 Plaintiffs represent a class of some 7,200 current and former American Family insurance agents seeking ERISA benefits who challenge that classification. Plaintiffs argue that the circumstances of their relationship with American Family demonstrate that they are employees, regardless of what American Family chooses to call them. Accordingly, the district court bifurcated this case to determine at the outset whether Plaintiffs are employees or independent contractors for purposes of ERISA.
 

 A twelve-day trial before an advisory jury ensued. Twenty-seven witnesses were called, and extensive documentary evidence was submitted. At the conclusion of the trial, the advisory jury unanimously concluded that Plaintiffs were employees. Though it was not bound by the jury's verdict, the district court reached the same conclusion.
 

 In reaching that conclusion, the district court relied on the factors articulated in
 
 Nationwide Mut. Ins. Co. v. Darden
 
 ,
 
 503 U.S. 318
 
 ,
 
 112 S.Ct. 1344
 
 ,
 
 117 L.Ed.2d 581
 
 (1992) for determining whether an individual is an employee or an independent contractor. The
 
 Darden
 
 factors include:
 

 the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hiring party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
 

 Id.
 

 at 323-24
 
 ,
 
 112 S.Ct. 1344
 
 . This Court has also held that an express agreement between the parties is a relevant factor.
 
 See
 

 Weary v. Cochran
 
 ,
 
 377 F.3d 522
 
 , 525 (6th Cir. 2004). The crux of this test is "the hiring party's right to control the manner and means by which the product is accomplished."
 
 Darden
 
 ,
 
 503 U.S. at 323
 
 ,
 
 112 S.Ct. 1344
 
 .
 

 Although the majority reaches a different conclusion than did the advisory jury and the district court, it disagrees with only a few aspects of the district court's analysis of the
 
 Darden
 
 factors. Because I agree with the advisory jury and the district court, this dissenting opinion will address only those
 
 Darden
 
 factors that the majority discusses. The district court's well-reasoned opinion speaks for itself as to the remaining
 
 Darden
 
 factors.
 

 Before addressing the majority's discussion of the
 
 Darden
 
 factors, a preliminary issue must be resolved.
 

 II. Standard of Review and Legal Framework
 

 As the majority explains, this case requires us to adopt a standard of review for district court determinations regarding the existence and degree of the
 
 Darden
 
 factors-that is, whether and to what extent each factor supports employee or independent contractor status. Plaintiffs assert that these determinations are findings of fact typically reviewed for clear error, while Defendants assert that they are conclusions of law typically reviewed
 
 de novo
 
 . The Sixth Circuit has yet to explicitly address this issue, and our cases implicitly addressing this issue fail to provide a clear answer.
 
 Compare
 

 Peno Trucking, Inc. v. Comm'r of Internal Revenue
 
 ,
 
 296 F. App'x 449
 
 , 454-60 (6th Cir. 2008) (reviewing for clear error, without much discussion)
 
 with
 

 Janette v. Am. Fidelity Grp., Ltd.
 
 ,
 
 298 F. App'x 467
 
 , 472-76 (6th Cir. 2008) (reviewing
 
 de novo
 
 , without much discussion). Accordingly, it might be helpful to consider cases from other circuits.
 

 Four circuits have explicitly addressed this issue, and all four held that the existence and degree of each
 
 Darden
 
 factor constitutes a finding of fact reviewed for clear error.
 
 See
 

 Berger Transfer & Storage v. Cent. States Pension Fund
 
 ,
 
 85 F.3d 1374
 
 , 1377-78 (8th Cir. 1996) ;
 
 Dole v. Snell
 
 ,
 
 875 F.2d 802
 
 , 805 (10th Cir. 1989) ;
 
 Brock v. Superior Care, Inc.
 
 ,
 
 840 F.2d 1054
 
 , 1059 (2d Cir. 1988) ;
 
 Brock v. Mr. W Fireworks, Inc.
 
 ,
 
 814 F.2d 1042
 
 , 1043-44 (5th Cir. 1987).
 
 [2]
 

 The Fifth Circuit's reasoning in
 
 Mr. W Fireworks
 
 is particularly instructive. In that case, the court explained that "[t]here are ... three types of findings involved in determining whether one is an employee within the meaning of the [Fair Labor Standards] Act."
 
 814 F.2d at 1044
 
 . "First, there are historical findings of fact that underlie a finding as to one of [the factors]."
 

 Id.
 

 These are undisputedly reviewed for clear error. "Second, there are those findings as to [the factors] themselves."
 

 Id.
 

 These findings are "plainly and simply based on inferences from [the historical] facts and thus are [also] questions of fact that we may set aside only if clearly erroneous."
 

 Id.
 

 "Finally, the district court must reach an ultimate conclusion that the workers at issue are 'employees' or 'independent contractors' "
 

 Id.
 

 at 1045
 
 . This is undisputedly reviewed
 
 de novo
 
 , as "[t]he ultimate finding as to employee status is not simply a factual inference drawn from historical facts [like the findings as to the factors themselves], but more accurately is a legal conclusion based on factual inferences drawn from historical facts."
 

 Id.
 

 The reasoning of the Second, Fifth, Eighth, and Tenth Circuits is sound. "The existence and degree of each [
 
 Darden
 
 ] factor [are] question[s] of fact" because they are based on simple inferences drawn from underlying historical findings of fact.
 
 Berger Transfer
 
 ,
 
 85 F.3d at 1377-78
 
 . For instance,
 
 Darden
 
 factor five is "whether the hiring party has the right to assign additional projects to the hired party."
 
 Darden
 
 ,
 
 503 U.S. at 323-24
 
 ,
 
 112 S.Ct. 1344
 
 . A finding that this factor supports employee status is based on a simple inference from a finding that "the hiring party had the right to assign additional projects to the hired party."
 
 See
 

 Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.
 
 ,
 
 58 F.3d 1093
 
 , 1096 (6th Cir. 1995). Thus, the two findings should both be subject to the clear error standard of review.
 

 The majority's contrary holding-that "[e]ach
 
 Darden
 
 factor is ... itself a 'legal standard' that the district court is applying to the facts"-is belied not only by the unanimity of other circuits that have addressed this issue, but also by the cases on which it purports to rely. The majority's reliance on my dissent in
 
 Weary v. Cochran
 
 , wherein I referred to
 
 Darden
 
 factor one as a "legal issue," is misplaced.
 
 377 F.3d 522
 
 , 532 (6th Cir. 2004). Needless to say, it is the majority opinion in
 
 Weary
 
 that binds this Court, including myself, no matter what is said in the dissent.
 
 [3]
 

 See
 

 Johnson v. Doodson Ins. Brokerage, LLC
 
 ,
 
 793 F.3d 674
 
 , 677 (6th Cir. 2015). The majority then cites
 
 Ware v. United States
 
 , in which this Court distinguished the "facts and circumstances" of an employment relationship from "the legal meaning and weight that those facts should be given."
 
 67 F.3d 574
 
 , 576 (6th Cir. 1995). But the "legal meaning" that the
 
 Darden
 
 factors should be given-
 
 i.e.
 
 , whether Plaintiffs are employees or independents contractors for purposes of ERISA-and the "legal weight" that the
 
 Darden
 
 factors should be given-
 
 i.e.
 
 , which factors should be relied upon more than others and when-are both undisputedly conclusions of law reviewed
 
 de novo
 
 .
 
 See
 

 Trs. of Resilient Floor Decorators Ins. Fund v. A&M Installations, Inc.
 
 ,
 
 395 F.3d 244
 
 , 249 (6th Cir. 2005) ;
 
 Hi-Tech Video Prods., Inc.v. Capital Cities/ABC, Inc.
 
 ,
 
 58 F.3d 1093
 
 , 1096 (6th Cir. 1995). Thus, the majority's reliance upon
 
 Ware
 
 misses the point. That case says nothing about the
 
 existence and degree
 
 of each
 
 Darden
 
 factor, a distinct, factual determination that should be reviewed for clear error.
 

 The procedural posture of this case may help explain the difficulty with the majority's reasoning. Because this is an interlocutory appeal, we "have no authority to review the district court's findings of fact."
 
 Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.
 
 ,
 
 270 F.3d 1018
 
 , 1023 (6th Cir. 2001). Consequently, a holding that the district court's determinations regarding the existence and degree of each
 
 Darden
 
 factor are findings of fact to be reviewed for clear error would, in this case, preclude any review of such determinations, and diminish the majority's ability to reverse a decision that the majority believes goes against the weight of authority.
 

 III. Analysis of
 
 Darden
 
 Factors One and Eight
 

 Even assuming arguendo that district court determinations regarding the existence and degree of each
 
 Darden
 
 factor constitute applications of law to fact that we have authority to review in this case, the majority incorrectly analyzes
 
 Darden
 
 factors one and eight, the only two factors on which the majority disagrees with the district court's analysis.
 

 Darden
 
 factor one is "the skill required"-here, of an insurance agent.
 
 Darden
 
 ,
 
 503 U.S. at 323-24
 
 ,
 
 112 S.Ct. 1344
 
 . And "the sale of insurance is a 'highly specialized field,' requiring considerable 'training,' 'education,' and 'skill.' "
 
 Weary
 
 ,
 
 377 F.3d at 527
 
 (quotation omitted). However, that is not the end of the inquiry. Because " 'skills are not the monopoly of independent contractors' ... [i]t is also important to ask how the worker acquired his skill."
 
 Keller v. Miri Microsystems, LLC
 
 ,
 
 781 F.3d 799
 
 , 809 (6th Cir. 2015) (quoting
 
 Sec'y of Labor v. Lauritzen
 
 ,
 
 835 F.2d 1529
 
 , 1537 (6th Cir. 1987) ).
 
 [4]
 
 "[If] the company provides all workers with the skills necessary to perform the job, then that weighs in favor of finding that the worker is indistinguishable from an employee."
 

 Id.
 

 Accordingly, in
 
 Keller
 
 , this Court held that there was a genuine issue of material fact regarding the skill required of the plaintiff because "[the defendant] provided [the plaintiff] with the critical training necessary to do the work."
 

 Id.
 

 It is undisputed that the same is true in this case. The district court found that "[Defendants] almost always hired untrained, and often unlicensed, agents and provided all the training they needed to be an American Family agent." (RE 320, PageID # 20972.) In fact, they "preferred to hire untrained agents so that they could be trained in the 'American Family' way." (
 
 Id.
 
 at PageID # 20972-73.) And "[i]f an agent had worked for a different company prior to being hired at American Family, they were re-trained in the ways of American Family agents upon hire." (
 
 Id.
 
 at PageID # 20973-74.) Thus, because "the company provide[d] all workers with the skills necessary to perform the job," the district court was correct in its determination that
 
 Darden
 
 factor one supports the status of Plaintiffs as employees.
 
 Keller
 
 ,
 
 781 F.3d at 809
 
 .
 

 The majority's contrary holding-that "this factor [weighs] in favor of independent contractor status"-is again undermined by the cases on which it purports to rely. The majority reasons that "[t]he first factor under
 
 Darden
 
 looks to 'whether the skill is an independent discipline (or profession) that is separate from the business and could be (or was) learned elsewhere,' " and that the skill of an insurance agent "could be" learned elsewhere, but in doing so relies solely on the dissent in
 
 Weary
 
 .
 
 [5]
 
 And the dissent in
 
 Weary
 
 glaringly conflicts with this Court's subsequent decision in
 
 Keller
 
 , in which this Court clearly stated that "[if] the company provides all workers with the skills necessary to perform the job,"
 
 Darden
 
 factor one supports employee status.
 
 Keller
 
 ,
 
 781 F.3d at 809
 
 . Whether those skills
 
 could have
 
 been learned elsewhere is irrelevant, and the majority's holding to the contrary flies in the face of binding precedent.
 

 Darden
 
 factor eight is "the hired party's role in hiring and paying assistants."
 
 Darden
 
 ,
 
 503 U.S. at 323-24
 
 ,
 
 112 S.Ct. 1344
 
 . The greater the role that the hired party plays, the more this factor supports independent contractor status, and the greater the role that the hiring party plays, the more this factor supports employee status.
 
 Weary
 
 ,
 
 377 F.3d at 527
 
 .
 

 In this case, the district court found that Plaintiffs "ha[d] primary authority to hire and fire their staff," but not "sole discretion" in doing so, and that they "ha[d] sole discretion in staff compensation matters." (RE 320, PageID # 20979.) Specifically, the district court found that Defendants played a role in hiring and firing Plaintiffs' staff (1) by "impos[ing] qualifications" on them, "including licensure, clean driving records, education levels, credit history, and minimum income to debt ratios;" (2) by requiring Plaintiffs' staff "to agree to a life-time non-solicitation agreement;" and (3) by "retain[ing] some authority to approve or disapprove of ... agency staff selections, above and beyond the imposition of [these] qualification requirements." (
 
 Id.
 
 ) This role included the ability of Defendants, without the consent of Plaintiffs, to "fire any agency staff ... who did not live up to the American Family Code of Conduct." (
 
 Id.
 
 ) Based on these facts, the district court determined
 
 Darden
 
 factor eight to be "neutral." (
 
 Id.
 
 at PageID # 20980.) I believe that
 
 Darden
 
 factor
 eight actually supports the status of Plaintiffs as employees.
 

 The majority's contrary holding, that the district court
 
 necessarily
 
 should have determined that
 
 Darden
 
 factor eight supported independent contractor status because it found that Plaintiffs had "primary authority" over hiring and paying assistants, notably lacks any supporting authority. The majority cites only this Court's unpublished decision in
 
 Janette
 
 , in which this Court rejected the plaintiff's argument that she had "no hiring authority" because she "could have hired assistants."
 
 298 F. App'x at 475
 
 . No role of the defendant in hiring and paying the plaintiff's assistants was discussed in that case, and it is thus inapposite.
 

 The majority seems to ultimately rest its argument on its reading of the phrase "primary authority." But "primary" does not
 
 necessarily
 
 mean more than anyone else; rather, it also means first in time.
 
 See, e.g.
 
 ,
 
 Primary
 
 , Oxford English Dictionary, http://www.oed.com/ (last visited December 21, 2018) ("Occurring or existing first in a sequence of events....");
 
 Primary
 
 , Merriam-Webster Dictionary, http://www.merriam-webster.com/ (last visited December 21, 2018) ("[F]irst in order of time or development."). And such usage by the district court when it found that Plaintiffs had "primary authority over hiring and paying assistants" would be entirely consistent with the facts of this case, because Defendants retained "some authority to approve or disapprove" or to "override" an agent's staff selections
 
 after
 
 they had been made. (RE 320, PageID # 20979-80.)
 

 IV. Weight to be Afforded the
 
 Darden
 
 Factors
 

 As previously discussed, "the crux of the
 
 Darden
 
 common law agency test is the hiring party's right to control the manner and means by which the product is accomplished."
 
 Weary
 
 ,
 
 377 F.3d at 525
 
 . Accordingly, "this Court has repeatedly held that the employer's ability to control job performance and the employment opportunities of the aggrieved individual are the most important of the many factors to be considered."
 
 Marie v. Am. Red Cross
 
 ,
 
 771 F.3d 344
 
 , 357 (6th Cir. 2014). In contrast, contractual labels assigned by the parties, while "certainly relevant,"
 
 Weary
 
 ,
 
 377 F.3d at 525
 
 , are less important.
 
 See, e.g.
 
 ,
 
 Keller
 
 ,
 
 781 F.3d at 804
 
 ("[W]e must look to see whether a worker, even when labeled as an 'independent contractor,' is, as a matter of 'economic reality,' an employee.");
 
 Solis v. Laurelbrook Sanitarium & Sch., Inc.
 
 ,
 
 642 F.3d 518
 
 , 522 (6th Cir. 2011) ("Whether an employment relationship exists under a given set of circumstances is not fixed by labels that parties may attach to their relationship....").
 

 Recognizing this hierarchy of the
 
 Darden
 
 factors, the district court found that "[Defendants] and [their] agents entered into Agent Agreements ... indicat[ing] that the parties intended for [the] agents to be treated as independent contractors." (RE 320, PageID # 20971-72.) However, the district court also found that "[o]ther internal documents ... indicate that [Defendants] expected [their] sales managers to exercise control over agents' methods and manner of performing their services." (
 
 Id.
 
 at PageID # 20972.) For instance, "[Defendants'] training manuals actually refer to agents as 'employees.' " (
 
 Id.
 
 at PageID # 20983.) The district court then analyzed the remaining
 
 Darden
 
 factors, and determined that they were "almost evenly split between favoring employee status and favoring independent contractor status." (
 
 Id.
 
 ). As a result, the district court turned back to "the most important of the many factors to be considered"-"[t]he employer's ability to control job performance and the employment opportunities of
 the aggrieved individual." (
 
 Id.
 
 at PageID # 20982.) (quoting
 
 Marie
 
 ,
 
 771 F.3d at
 
 357 ).
 

 The district court listed the numerous ways in which Defendants had the ability to control and did control Plaintiffs' job performance and employment opportunities. These include, but are not limited to, the following: (1) Plaintiffs did not own a book of business; (2) Plaintiffs did not own any policies; (3) Defendants unilaterally reassigned policies brought in by one agent to others; (4) Defendants could require Plaintiffs to service policies that they did not initiate, without any compensation; (5) Defendants did not allow Plaintiffs to sell insurance from other companies not financially connected to Defendants; (6) Defendants actively discouraged and in some cases prohibited Plaintiffs from taking on other employment, even if it was unrelated to insurances sales; (7) Defendants required Plaintiffs to sign a one-year non-compete agreement, and required Plaintiffs' staff to sign a lifetime non-compete agreement; and (8) Defendants trained their sales managers to believe they were Plaintiffs' bosses and had the authority to demand Plaintiffs' compliance-a belief which many acted upon. On these facts, and in accordance with this analysis, I agree with the district court that Plaintiffs are employees for purposes of ERISA.
 

 The majority's holding to the contrary-that Plaintiffs are independent contractors for purposes of ERISA-is again undermined by the cases on which it purports to rely. The majority first reasons that "[b]ecause ERISA cases focus on the financial benefits that a company should have provided ... the
 
 Darden
 
 factors that most pertain to financial structure ... carry more weight," as opposed to the employer's ability to control job performance and the employment opportunities of the aggrieved individual. But in doing so, the majority relies solely on this Court's decision in
 
 Ware
 
 , in which this Court stated that "the relative weight given each [
 
 Darden
 
 ] factor may differ depending upon the legal context of the determination."
 
 67 F.3d at 578
 
 . This Court in
 
 Ware
 
 then elaborated that the traditionally important control factors are "more relevant in the context of copyright ownership."
 

 Id.
 

 While it also noted that the reverse may be true in the ERISA context-that the traditionally important control factors may be "less important,"
 

 id.
 

 -such speculation was merely dicta, as
 
 Ware
 
 exclusively concerned employment status in the copyright ownership context, and had nothing to do with ERISA.
 
 See
 

 United States v. Hardin
 
 ,
 
 539 F.3d 404
 
 , 411 (6th Cir. 2008) (holding that language in a prior decision was dicta because it "was not necessary to the determination of the issue on appeal"). And "one panel of this [C]ourt is not bound by dicta in a previously published panel opinion."
 
 United States v.Burroughs
 
 ,
 
 5 F.3d 192
 
 , 194 (6th Cir. 1993). Moreover, this characterization of the speculation about ERISA in
 
 Ware
 
 is further supported by this Court's decision in
 
 Simpson v. Ernst & Young
 
 , an ERISA case decided the year after
 
 Ware
 
 , in which this Court reaffirmed "the employer's ability to control job performance and employment opportunities of the aggrieved individual as the most important of many elements to be evaluated" when determining that individual's employment status.
 
 100 F.3d 436
 
 , 442 (6th Cir. 1996).
 

 The majority also reasons that the district court "should have considered the parties' express agreement to be of greater force." As briefly discussed above, this reasoning is unpersuasive because the district court properly considered the Agent Agreements as relevant but not dispositive evidence of independent contractor status. No greater consideration was warranted, particularly given that the language in the
 Agent Agreements is contradicted by language in other internal documents, including Defendants' training manuals, and that contractual labels are particularly susceptible to manipulation such that over-reliance on them would "defeat the purpose" of ERISA.
 
 Shah v. Racetrac Petroleum Co.
 
 ,
 
 338 F.3d 557
 
 , 575 (6th Cir. 2003) ;
 
 see also
 

 Commodity Futures Trading Com'n v. Erskine
 
 ,
 
 512 F.3d 309
 
 , 318 (6th Cir. 2008).
 

 For all of the foregoing reasons, I respectfully dissent.
 

 Except as otherwise indicated, record citations refer to the record in district court action No. 13-cv-00437.
 

 Those cases that pre-date
 
 Darden
 
 address the same issue with regard to the
 
 Darden
 
 factors' predecessor, the
 
 Silk
 
 factors.
 
 See
 

 United States v. Silk
 
 ,
 
 331 U.S. 704
 
 ,
 
 67 S.Ct. 1463
 
 ,
 
 91 L.Ed. 1757
 
 (1947),
 
 abrogated by
 

 Darden
 
 ,
 
 503 U.S. at 325
 
 ,
 
 112 S.Ct. 1344
 
 .
 

 The majority cites various portions of my dissent in
 
 Weary
 
 a total of five times throughout its opinion. Such cherry-picking does nothing to increase the persuasiveness of the majority's reasoning, particularly to the extent that my dissent is at odds with controlling case law and the subsequent published decisions of this Court.
 

 The Seventh Circuit has also recognized the importance of this question.
 
 See
 

 Equal Emp't Opportunity Comm'n v. N. Knox Sch. Corp.
 
 ,
 
 154 F.3d 744
 
 , 747 (7th Cir. 1998) (explaining that the Seventh Circuit's
 
 Knight
 
 factors, in which the
 
 Darden
 
 factors are "subsumed," include "the kind of occupation and nature of skill required,
 
 including whether skills are obtained in the workplace
 
 ") (emphasis added).
 

 The majority also cites this Court's unpublished decision in
 
 Janette
 
 , which quoted the same passage from the dissent in
 
 Weary
 
 . However, this Court in
 
 Janette
 
 cited that passage as though it were from the
 
 majority
 
 in
 
 Weary
 
 , failing to indicate "(Clay, J., dissenting)" after its pincite.
 
 See
 

 298 F. App'x at 474
 
 . Thus, it is possible if not likely that this Court in
 
 Janette
 
 mistakenly believed it was quoting binding precedent as opposed to a non-binding dissent. Regardless,
 
 Janette
 
 itself is an unpublished and therefore non-binding decision.
 
 See
 

 United States v. Yates
 
 ,
 
 866 F.3d 723
 
 , 728 (6th Cir. 2017).